Argued November 12; affirmed December 1, 1936

## STATE *v.* CARROLL
(62 P. (2d) 830)

Department 1.

K. C. *Tanner,* of Portland (Green, Tanner & Boesen and Tom Garland, all of Portland, on the brief), for appellant.

*T. B. Handley,* Deputy District Attorney, of Portland (James R. Bain, District Attorney, and Albert M. Hodler, Deputy District Attorney, both of Portland, on the brief), for the State.

KELLY, J. At the termination of the series of events disclosed by this record, defendant Carroll was not personally present. Carroll was charged jointly with Clarence Gradl, Joseph C. O'Brien, another, against whom an order of dismissal was entered, and John Doe, with the crime of robbery not being armed with a dangerous weapon committed on the person of J. Kessler on May 2, 1935.

Kessler, J. O. Hightower and Edward W. Hollis were employed as seamen on board the "Larry Doheny", which on the date named was anchored at the Shell Oil docks, Portland. They left the boat at approximately 6 p. m. on said day taking a taxicab with directions to the driver to go to the Multnomah hotel. Before reaching the hotel, the cab in which they were driving was intercepted by defendant Carroll and several other men. The state's witnesses testified that many of these men were armed with monkey wrenches, cranks, and other weapons; and, in effect, that Kessler and his companions were compelled to leave the taxicab and enter the car Carroll was driving. They were then taken by Carroll and his associates to the Seamen's hall. From that hall they were taken by Carroll and his associates to a room in the S. P. hotel where they were questioned and their personal effects were examined, and where it was proposed that they return to the boat and endeavor to induce the other seamen on board to leave the boat with them. To execute this plan, two bottles of whiskey were secured, Kessler then advancing $5 with which to purchase it. This liquor, it was suggested,

should be taken to the boat and presented to the boatswain as a means of explaining their return to the boat. During the time Kessler and his mates were in the room at the S. P. hotel Carroll left it. Carroll says that his purpose in leaving the room was to take some books to the meeting in session. Kessler's baggage and that of his companions, with which they left the boat, was to have been taken to the stage depot. Carroll, O'Brien and some others accompanied Kessler and his mates to a taxicab at the S. P. hotel and caused them to enter it, telling them that they would be accompanied by a man in it armed with a gun for their protection. After this taxicab had gone some distance, it was intercepted by Carroll and Gradl. According to the testimony of Kessler, Gradl, entered it, directed the driver to drive to the S. P. yards on the east side of the Willamette river, where, according to Kessler, Gradl gave him a beating and robbed him.

When the events of this case transpired, there was in progress a strike of the members of the Seamen's Union against the employers engaged in cargo shipments of oil. Defendant Carroll was a member of the striking union and a member of the strike committee in the Port of Portland. Defendant Gradl was a member of the Seamen's Union and when Kessler and his companions were taken to the Seamen's hall, Gradl was door tender there, a meeting of one branch of the striking seamen being in session. Kessler and his companions were strike breakers.

Shortly after the occurrence at the S. P. siding above related, defendant Carroll was arrested and in his possession was the draft of a telegram which Carroll had prepared, signed and intended to send to the strike committee in Los Angeles. This telegram is as follows:

"Found three rats here per S. S. Larry Doheny, investigate this information at once. These rats came from the Marine Service Bureau, 6th & Main in Los Angeles. Mr. Fish is hiring. They are housing them at Ritz Hotel Los Angeles. Entire 12th floor of this hotel. All air. We took good care of the boys. Wire me answer."

Carroll testified that this telegram was written before he had any knowledge that Gradl had assaulted Kessler; but it is susceptible of the construction that Carroll participated in the treatment accorded Kessler.

The testimony in behalf of defendant conflicts with that of the state's witnesses in respect to all of the material points in the case.

■■ It is urged by defendant that in order to sustain the conviction of Carroll for assault it must appear that he was an accessory to the crime of robbery. This contention is based upon the fact that the indictment charges the commission of robbery; and it is said that, unless there is testimony tending to show that a defendant, who is not personally present at the commission of a crime, aided or abetted in the crime charged, no conviction can be had.

This argument fails to take account of the fact that the crime of assault is charged in the indictment: *Abner v. Com.,* 210 Ky. 536 (276 S. W. 513); *People v. Allie,* 216 Mich. 133 (184 N. W. 423); *People v. Brockett,* 195 Mich. 169 (161 N. W. 991); *Robertson v. State,* 24 Ala. App. 237 (133 So. 742); *Anderson v. State,* 168 Miss. 424 (151 So. 558); *People v. Foss,* 85 Cal. App. 269 (259 P. 123); *State v. Beatty,* 59 Wash. 235 (109 P. 1011); *Johnson v. State,* 17 Ala. App. 416 (85 So. 576); *Ex Parte Carson,* 17 Ala. App. 345 (85 So. 827); *State v. McDonald,* 91 N. J. L. 233 (103 Atl. 165), affirming 89 N. J. L. 421 (99 Atl. 128); *Com. v. Anagustov,* 82 Pa. Super. 156.

The alleged robbery is charged to have been committed "by force and violence to the person of one Jay Kessler". This is a sufficient allegation of assault.

We quote an approved definition of the crime of assault:

"An assault is any attempt or offer, with force or violence, to do a corporal hurt to another, whether from malice or wantonness, with such circumstances as denote, at the time, an intention to do it, coupled with a present ability to carry such intention into effect." *State v. Sanders,* 92 S. C. 427 (75 S. E. 702, 42 L. R. A. (N. S.) 424); *State v. Cody,* 94 Iowa 169 (62 N. W. 702); *Tarver v. State,* 43 Ala. 354; *People v. Lilley,* 43 Mich. 521 (5 N. W. 982); *State v. Lewis,* 173 Iowa 643 (154 N. W. 432, Ann. Cas. 1918A 402. Note 1, § 2, Subject, Assault and Battery, 4 Am. Jur. 125.

"In all cases, the defendant may be found guilty of any crime, the commission of which is necessarily included in that with which he is charged in the indictment," etc. Section 13-947, Oregon Code 1930.

"All persons concerned in the commission of a crime, whether it be felony or misdemeanor, and whether they directly commit the act constituting the crime, or aid and abet in its commission, though not present, are principals, and to be tried and punished as such." Section 14-1002, Oregon Code 1930.

According to the testimony in behalf of the state, Kessler and his companions were taken out of the taxi-cab, which they had engaged, and taken to the Seamen's hall; Carroll participated in the coercion at that place and at the room in the S. P. hotel; Carroll participated in putting Kessler and the other seamen into the taxi-cab which later Carroll and Gradl intercepted and Carroll was alongside of Gradl at that time.

■ It is urged that to find Carroll guilty of aiding or abetting Gradl, it is necessary to base an inference upon an inference. We do not so view the record. It is said

that we must infer from the opportunity afforded, because Carroll and Gradl were together, that they conspired, and that, having drawn that inference, we must draw therefrom the further inference that the crime actually committed was the one Carroll conspired with Gradl to commit.

We think that the jury could find that the fact was definitely proved that Carroll desired to assault Kessler. That is not an inference but a fact. There is direct testimony to the effect that he did assault Kessler while Kessler was leaving the "Doheny" by taxicab. The evidence of Kessler to the effect that Gradl and Carroll were together, when the taxicab was stopped into which Carroll and his associates had put Kessler, is sufficient upon which the jury could find as a fact and not as an inference that there was an opportunity for Gradl and Carroll to have conspired to assault Kessler. From the point of interception Gradl directed the taxicab to go directly to the place where the assault was committed and this was done. From these facts the jury could infer that Carroll advised Gradl to assault Kessler.

Moreover, no assault could have been made, as it was, by Gradl, if Carroll and his assistants had not put Kessler into the taxicab at the S. P. hotel, in which, according to Kessler and his companions, the man armed with the gun proved to be hostile to them rather than protective.

We think that the trial court committed no error in submitting the case to the jury.

The judgment of the circuit court is affirmed.

BAILEY, BEAN and ROSSMAN, JJ., concur.