543 P.2d 1058 (1975)
STATE of Oregon, Respondent,
v.
Billy Walker WASHINGTON, Petitioner.
Supreme Court of Oregon, In Banc.
Argued and Submitted June 2, 1975.
Decided December 26, 1975.
*1059 J. Marvin Kuhn, Deputy Public Defender, Salem, argued the cause for petitioner. With him on the briefs was Gary D. Babcock, Public Defender, Salem.
Scott McAlister, Asst. Atty. Gen., Salem, argued the cause for respondent. With him on the briefs were Lee Johnson, Atty. Gen., and W. Michael Gillette, Sol. Gen., Salem.
HOWELL, Justice.
This is a petition to review the decision of the Court of Appeals in State v. Washington, 20 Or. App. 350, 531 P.2d 743 (1975), which affirmed a conviction of the crime of burglary in the first degree. At trial, petitioner had requested a jury instruction on theft in the second degree by receiving. The requested instruction was based on his version of the events leading up to his arrest. The trial court denied his request, and the jury found him guilty of burglary. We granted the petitions for review in this case and in the companion case, State v. Nye, 20 Or. App. 454, 532 P.2d 42 (1975), to reexamine the lesser included offense doctrine in Oregon. The facts are as follows:
On the afternoon of February 14, 1974, Robert Redfern and defendant were together in a cocktail lounge in Portland. Redfern's car was being repaired at a nearby garage, and defendant offered him a ride. Redfern testified that he dozed off shortly after leaving the lounge and awoke as he was being pushed from the car. Redfern also testified that before being ejected from the car he had been deprived of two wallets and a set of keys, including those to his house.
Approximately one and one-half hours later, Redfern's daughter, Judith DeVine, returned to her father's home where she also lived. As she approached, she noticed a bronze Pontiac with Iowa license plates in front of the house. The motor was running, but the car appeared to be unattended. Entering the house, she discovered that the front door was ajar, and, as she laid down her purse, she turned and saw a man coming down the hallway toward her. She asked him what he was doing in her home. The intruder grabbed her, covered her eyes, and dragged her down the hall. She was forced into the bathroom and beaten. The intruder then dragged her into the family room, shoved her up against a couch and told her not to move or she would be killed. He then left the room, and shortly thereafter Ms. DeVine *1060 heard the front door slam. She left the house by a back door and called the police from a neighbor's home.
Investigation of the premises revealed that Ms. DeVine's purse had been taken, and that a portable stereo and a television set had been moved. There were no signs of forced entry. A single fingerprint was found on the stereo dust cover.
Later in the evening of the burglary, the police located a car matching the description of the bronze Pontiac. It was parked in front of the cocktail lounge at which defendant and Redfern had met. The officers saw a man leave the car and enter the lounge. Several minutes later, they noticed the car being driven away. The officers then followed the car and stopped it.
Defendant, who was driving the car, got out at the officers' request. While the door of the car was open, one of the officers saw a purse protruding from beneath the seat. When he pulled out the purse a wallet came with it. Defendant and the items found beneath the car seat were then taken to the police station.
Under questioning at the police station, defendant related the following story of the day's events:
Defendant had met Redfern at the cocktail lounge where Redfern was buying drinks. Redfern ran out of money and requested a ride to his place of employment to get more. Defendant offered Redfern a ride, and, on the way to the car, they encountered Nathaniel Johnson, who joined them for the ride. At Redfern's place of employment, defendant remained in the car while Johnson and Redfern went in together to get the money. A short time later Johnson returned alone to the car, stating that Redfern had decided to stay. Johnson then asked defendant to drive to an address in northeast Portland. The address was that of Redfern's home.
When they arrived, Johnson went into the house alone while defendant remained in the car. After a few minutes, defendant saw a woman drive up and enter the house. Eventually, Johnson emerged from the house carrying a purse and a paper bag. He asked to be driven back to the cocktail lounge. On the way, defendant asked Johnson, who was going through the purse, what had happened in the house. Johnson explained that Redfern owed him money which he was attempting to collect. He said that the woman who drove up had pretended not to know anything about the debt, so he had had to beat her. Upon their arrival at the lounge, Johnson left the purse in the car and asked defendant to dispose of it. Defendant told the police that he had planned to return the purse but had not had time to do so before he was stopped.
Neither the defense nor the police were able to locate Johnson or to confirm his existence. The fingerprint on the stereo dust cover was not that of the defendant, and Ms. DeVine was unable to identify the defendant as her assailant.
On February 21, 1974, the grand jury returned the following indictment:
"The above-named defendant is accused by the Grand Jury of Multnomah County, State of Oregon, by this indictment of the crime of BURGLARY IN THE FIRST DEGREE committed as follows:
"The said defendant, on or about February 14, 1974, in the County of Multnomah, State of Oregon, did knowingly and unlawfully enter a building, to-wit: a dwelling, located at 5526 Northeast 38th, Portland, in the County and State aforesaid, with the intent to commit the crime of theft therein, contrary to the Statutes in such cases made and provided, and against the peace and dignity of the State of Oregon.
"* * * * *."
The sole issue before us in this petition for review is whether the trial court erred in refusing to give defendant's requested *1061 instruction on the crime of theft in the second degree.[1] We conclude that no error was committed.
We have two statutes which bear on this problem: ORS 136.460, relating to inferior degrees of crimes, and ORS 136.465, relating to necessarily included offenses.
ORS 136.460 states:
"Verdict where crime consists of degrees. Upon a charge for a crime consisting of different degrees, the jury may find the defendant not guilty of the degree charged in the accusatory instrument and guilty of any degree inferior thereto or of an attempt to commit the crime or any such inferior degree thereof."
This statute gives both the defendant and the prosecution the right to receive instructions either as to lesser degrees of crimes consisting of different degrees (such as first and second degree burglary), or as to the crime of attempting to commit the offense charged or a lesser degree thereof.
ORS 136.465 states:
"Verdict where crime or attempt included within charge. In all cases, the defendant may be found guilty of any crime the commission of which is necessarily included in that with which he is charged in the accusatory instrument or of an attempt to commit such crime."
That statute relates to lesser offenses which are not merely lower degrees of the crime charged but are either necessarily included in the statutory definition of the crime (criminal trespass in burglary) or expressly included in the criminal offense as charged in the indictment (assault with a deadly weapon under indictment charging assault with intent to kill and alleging use of a deadly weapon). See, e.g., State v. Eyle, 236 Or. 199, 201, 388 P.2d 110 (1963); State v. Carroll, 155 Or. 85, 88-89, 62 P.2d 830 (1936); State v. Houghton, 46 Or. 12, 14, 75 P. 822 (1904); State of Oregon v. McLennen, 16 Or. 59, 60-61, 16 P. 879 (1888); State v. Washington, supra. Thus, either the defendant or the prosecution can request an instruction as to lesser offenses which are included either under the statutory definition or under the indictment charging the crime.
The single limitation on the right of either the prosecution or the defendant to request lesser included offense instructions under these statutes is that there must be evidence, or an inference which can be drawn from the evidence, which supports the requested instruction so that the jury could rationally and consistently find the defendant guilty of the lesser offense and innocent of the greater.[2]See *1062 State v. Williams, 270 Or. 152, 526 P.2d 1384 (1974), and cases cited therein.
Historically, the lesser included offense doctrine originated as a rule which was developed to assist the prosecution in obtaining a conviction when the evidence produced at trial was insufficient as to one or more elements of the offense actually charged in the indictment. See Fuller v. United States, 132 U.S.App.D.C. 264, 407 F.2d 1199, 1230, n. 40 (1967), cert. denied 393 U.S. 1120, 89 S.Ct. 999, 22 L.Ed.2d 125 (1969); People v. Mussenden, 308 N.Y. 558, 562, 127 N.E.2d 551 (1955). As originally developed, it allowed the prosecution to request an instruction as to a lesser offense, the elements of which were included in the statutory or common law definition of the offense charged. Since the defendant had notice as to all elements of lesser crimes necessarily included in the principal offense, no due process notice problems were involved in allowing a conviction on the lesser included offense. See Paterno v. Lyons, 334 U.S. 314, 320-21, 68 S.Ct. 1044, 92 L.Ed. 1409 (1948); State v. Anderson, 270 So.2d 353, 356 (Fla. 1972). Eventually, the doctrine was extended so as to permit the defendant to request an instruction on lesser included offenses  but only in cases in which the prosecution could have obtained such an instruction. Fuller v. United States, supra.
Gradually, several jurisdictions began to expand the concept of lesser included offenses beyond those necessarily included in the common law or statutory definition of the principal crime. These courts held that the allegations of the indictment or. pleadings in a criminal case were also sufficient to give the defendant notice of the criminal conduct complained of and could supplement the elements of criminal conduct contained in the statute defining the principal offense. Thus, the prosecution was allowed to request additional instructions on offenses which were were not necessarily included in the statutory or common law definition of the principal crime, but which were supported by the allegations of the pleadings. See 4 Wharton's Criminal Law and Procedure, § 1888 (Anderson ed 1957); Comment, Jury Instructions on Lesser Included Offenses, 57 Nw.L.Rev. 62, 63-64 (1963).
Under the pleadings or indictment approach, like the statutory or common law approach, defendants were also able to obtain instructions on lesser offenses  but only if the prosecution would have been entitled to a similar instruction. Thus, the rules for the prosecution and the defendant remained identical. See e.g., Fuller v. United States, supra at 1230.
The pleadings or indictment approach is followed in the majority of jurisdictions throughout this country and is codified in Oregon in ORS 136.460 and 136.465. Neither of these statutes supports defendant's requested instruction on second degree theft as a lesser included offense to the charge of burglary. Second degree theft  in this case, theft by receiving  is not a crime which is necessarily included in the statutory definition of the offense charged, burglary. Moreover, the indictment in this case does not allege that a theft was committed, only that the defendant entered with the intent to commit the crime of theft.[3] Consequently, there was *1063 no basis in this case for a lesser included offense instruction on theft by receiving.[4]
The defendant argues, however, that even if second degree theft is not a lesser included offense either under the burglary statute or under the allegations of the indictment, the requested instruction should have been given since there was evidence in this case which, if believed, could provide the basis for a conviction as to second-degree theft and an acquittal as to the burglary charge. Only one jurisdiction, the United States Circuit Court for the District of Columbia, follows an approach that would permit such an instruction in similar situations. See United States v. Whitaker, 144 U.S.App.D.C. 344, 447 F.2d 314 (1971).
The Whitaker court concluded that the defendant's right to lesser included offense instructions ought not to be limited by the same restrictions which apply to the prosecution. In Whitaker, the court pointed out that the restrictions on the prosecution's use of such instructions stem from due process considerations involving the sufficiency of the notice afforded the defendant by the charges brought against him. The court reasoned that, since the defendant himself was requesting the instruction, no due process problems were involved, and, therefore, "[t]he defense ought not to be restricted by the stringent constitutional limits upon the prosecutor's right." 447 F.2d at 321.
We believe, however, that there are other reasons for retaining the restrictions on the defendant's right to request lesser included offense instructions. The first, of course, is that in this state the statutes set forth above seem to preclude instructions which do not have a basis either in the statutory framework or in the indictment itself. Second, we feel that, even in the absence of those statutes, the interests of judicial administration would require the continuance of the present limitations on the defendant's right to lesser included offense instructions. If defendant's approach were to be adopted, we believe that trial courts would be receiving requests for instructions limited only by the imagination and ingenuity of the defendant. Requests for such instructions would act only to further complicate the jury's decision-making process. Under the dissent's approach, trial judges, not being certain whether the requested instruction were actually proper under the new standard, would usually give the instruction in order to avoid any possibility of reversible error on appeal. This would not only needlessly prolong the court's instructions, but would also add to the number of issues which the jury would be required to consider  thereby substantially increasing the possibility for jury confusion and compromise verdicts.[5]
Moreover, if the dissent's approach were to be adopted, we have no doubt that many more appeals would ultimately be necessary to finally delineate its bounds. The standard suggested by the dissent for administering its approach is extremely vague. Under that approach, the only restrictions on instructions as to lesser offenses is that they be "inconsistent with and rebut the state's charge" rather than relating to "extraneous offenses which do not serve to rebut the offense charged." Individual trial judges and trial counsel would certainly *1064 have very different ideas as to whether a particular requested instruction was inconsistent with and in rebuttal of the offense charged. For example, if one were to attempt to apply that test to the facts in the companion case, State v. Nye, it would certainly not be unreasonable to conclude that the requested instruction on sexual abuse was not "inconsistent with and [did not] rebut the state's charge" of burglary by breaking and entering with the intent to commit sexual abuse. Similarly, as applied to the facts in this case, it would seem that a requested instruction on theft by receiving amounts to an instruction on an "extraneous offense which [does] not serve to rebut the offense charge"  first degree burglary.
Apparently the dissent would apply its suggested approach even when the evidence relied on in support of the lesser offense instruction had not been presented by the defendant but had been gleaned from the prosecution's own case by a defendant who continued to insist he was guilty of nothing. As evidenced by its application to State v. Nye, the dissent's approach would allow defendants to argue insanity or an alibi as a complete defense, while at the same time sifting the state's evidence for facts sufficient to support any inference running contrary to the prosecution's case on one or more elements of the offense charged  and on that basis alone demanding instructions on one or more lesser offenses. Defendants would then have little to lose in requesting instructions on other crimes based on inferences which might be drawn from portions of the state's evidence. If they were allowed to demand lesser offense instructions on the basis of such evidence, defendants would have little incentive to come forward with evidence of their own as to the actual events which took place and, therefore, would be free to argue a fictitious alibi or other complete defense at the same time.
While the dissent asserts that its "reasonably precise rule" would avoid "the danger of giving the defendant a tool for confusion and possible reversible error," we believe that the view expressed by the Florida Supreme Court in rejecting a similar approach is a more accurate assessment of its effect: "Such an innovation in our law is more conducive to confusion than to reason." State v. Anderson, 270 So.2d 353, 357 (Fla. 1972).
We believe the approach suggested by the dissent would impair rather than promote the efficient administration of criminal justice.
Affirmed.
DENECKE, Justice (specially concurring).
I concur because of my opinion that the majority is correct in concluding that the confusion which would result if the views of the dissenting opinion were adopted outweighs any possible additional fairness which might accrue to defendants.
I am influenced by the fact that the dissenting opinion is necessarily grounded upon the assumption that it is necessary to submit more lesser offenses to the jury because otherwise the jury is apt to disregard the instructions given it by the trial court. The dissent states:
"When the defendant asks for an instruction of an offense not charged, he does so to rebut and contradict the state's version of what happened and what crime was committed. He is hopeful, of course, that the jury will accept his defense of not guilty, but short of that he wants a safeguard against the danger of losing if the jury is forced to decide between acquittal and guilt when there is not sufficient evidence to prove the crime charged but sufficient evidence to prove a lesser offense."
I understand the dissent to mean by this statement that if the jury is not instructed on a lesser, but not included, offense it may disregard the trial court's instructions and convict the defendant of the charged offense even though the elements of the offense are not proved beyond a reasonable *1065 doubt. In civil cases we make the contrary assumption; that is, we assume that the jury has followed the instructions. For example, Rhodes v. Moore, 239 Or. 454, 456, 398 P.2d 189 (1965). Perhaps this assumption is not completely well founded in criminal cases under these circumstances. I do not believe, however, that the contrary is so well established that fairness for the defendant requires, at the risk of confusion to the jury, the adoption of the rule advocated by the dissent.
BRYSON, Justice (specially concurring).
I concur in the majority opinion because in this case the defendant's testimony of how the crime was committed or what his acts consisted of specifically denies that he entered the Redfern dwelling. Defendant claims the mythical witness, Johnson, entered the dwelling.
When a defendant charged with burglary testifies he was not in the dwelling, that denial frames the question posed by the indictment for the jury's decision because one of the necessary elements of the crime of Burglary in the First Degree is that "he enters or remains unlawfully in a [dwelling] with intent to commit a crime therein." ORS 164.215(1).
If the defendant was not in the dwelling, justice would demand that he be acquitted of the crime for which he is charged; not that he be found guilty of some other crime because the state did not so charge him nor could the state request that the jury be instructed that he be found guilty of some other crime, such as Theft by Receiving. ORS 164.095.
If the state requested that the jury also be instructed on the crime of Theft in the Second Degree by Receiving, ORS 164.015(5), as requested by the defendant, and the jury returned a guilty verdict on that instruction, the defendant could assert that he was found guilty of a crime of which he was not indicted and therefore had no notice and no opportunity to properly consent. See Kelly v. United States, 125 U.S. App.D.C. 205, 370 F.2d 227, 229 (1966), cert. denied 388 U.S. 913, 87 S.Ct. 2127, 18 L.Ed.2d 1355 (1967). Thus the state would be placed in an impossible position.
ORS 164.025 provides for the consolidation of certain theft offenses. ORS 164.035 specifically provides for certain defenses to the crime of theft. This is another sound reason why the state could not request an instruction that the jury might find a defendant guilty of Theft in the Second Degree by Receiving when the indictment charged Burglary in the First Degree.
If we accepted the defendant's contention in this case, that he may ask that the jury be instructed on any other crime for which he might conjure up facts, trial courts would find themselves in a state of confusion and interminable lengthy trials leaving the jury in a state of wonderment. For these reasons I concur in the majority opinion.
O'CONNELL, Chief Justice (dissenting).
It is universally held that a lesser-included offense instruction, whether requested by the prosecution or the defense, is appropriate only if the greater offense consists of every element of the lesser offense plus some other element or elements. One is prompted to ask why the law, in formulating the limits upon a defendant's right to an instruction on an offense other than that charged, should be concerned with this kind of logical exercise in the classification of elements of related crimes. It seems clear enough that the definition of a lesser-included offense serves a purpose in establishing the limits to be placed upon the prosecution's right to an instruction on a crime other than that charged, but it is difficult to understand what purpose the definition has in establishing the limits on the defendant's right to such an instruction.
On constitutional grounds, the state is entitled to an instruction only with respect to those crimes of which the defendant has *1066 notice through the charges made in the indictment or information. When the state frames the complaint in terms of one crime, the defendant may be regarded as having received notice that he is being charged implicitly with the commission of any lesser crime which is necessarily included in the crime charged.[1] In this context, the lesser-included offense doctrine is simply an inquiry into the sufficiency of notice to the defendant.[2]
Traditional analysis, followed by the Court of Appeals, has turned this requirement upside down, saying in effect that if the state does not have a right to an instruction on an offense not charged, the defendant likewise is without such right. It is obvious that this mutuality principle is inappropriate as a basis for restricting the defendant's right to instructions on crimes not charged because where the defendant himself requests the instruction, notice to him is immaterial.
To continue limiting the defendant's rights to rebut the prosecutor's charge by reliance on defendant's right to fair notice is indefensible. This results in cases in which the defendant is not allowed to put his factually supported alternative theory of the case before the jury either because it is conceivable that the lesser crime might have been committed in a way other than the way he is alleged to have committed it, or because the prosecutor chose to give the defendant the least possible notice in the accusatory instrument.
A good example of the absurdity of traditional analysis when applied to defendants is State v. Everett, 157 N.W.2d 144 (Iowa 1968), in which the defendant was charged with larceny of an automobile and requested an instruction on the lesser offense *1067 of operating a motor vehicle without the owner's consent, the majority upheld the denial of the request on the ground that the lesser crime required operating a vehicle while the greater crime could be committed merely by a taking, for example, towing away. This was considered persuasive even though the defendant was charged with taking by driving the auto away.
The minority would have allowed the instruction because the indictment specified that defendant had driven the car away. Even this somewhat more reasonable pleadings approach, however, remains tied to the notice requirement of the indictment which is totally irrelevant to the reasons for the defendant's request.
This inadequacy is well illustrated in State v. Nye, decided today. Defendant Nye was charged with burglary committed by entering a house with intent to commit sexual abuse therein. His request for an instruction on sexual abuse was denied below because sexual abuse is not included in burglary. Even under the more fact-oriented pleadings approach to the determination of what is lesser included, sexual abuse would not qualify because he was not charged with sexual abuse or its elements, but only with intending to commit it.
This result cannot be defended. Any reason one may cite for allowing a defendant to request an instruction on a lesser crime would apply as much to the underlying crime upon which a burglary is based as it would to an included offense. Yet traditional analysis, blinded by unjustifiable adherence to the idea of mutuality, operates to distinguish the two solely by reference to the requirement of notice to the defendant, even though the defendant makes the request.
This does not conclude the inquiry as to whether there may not be reasons for limiting the defendant's right to instructions on crimes other than those charged. But if there is to be such a limitation, the basis for it should be identified. A satisfactory explanation is not given by stating simply that the instruction requested must be on a necessarily lesser-included offense.
Some interest must be served by the imposition of a limitation upon the defendant. If the defendant were to request an instruction on a crime the commission of which would in no respect rebut the state's version of what occurred, the instruction would serve only to interject an irrelevant issue and should not be allowed.[3] However, where the evidence supporting his version of what happened is inconsistent with the evidence which underlies the prosecution's case but is consistent with a lesser but not included offense, there is no reason why the jury should not be permitted to decide that the defendant's version of what happened is more plausible than that advanced by the state. The delineation of the charges should not be the state's monopoly. In the interest of fairness to the defendant, the jury should be given the opportunity to escape the dilemma of acquitting a defendant guilty of a crime less than that charged, or finding him guilty of the crime charged but not made out by the state.
The interest of the prosecution is also served by avoiding such a choice because, if the jury elects to acquit the accused, the state will almost certainly have foreclosed the opportunity to charge the lesser offense by the rule laid down in State v. Brown, 262 Or. 442, 497 P.2d 1191 (1972), requiring all offenses arising out of one transaction to be prosecuted in one proceeding. In these circumstances, then, the interest of the state is advanced by permitting the jury in one proceeding to convict a guilty defendant who would otherwise go free.
*1068 At the stage in a criminal proceeding when the prosecutor drafts the accusatory instrument, frequently the facts then known leave it uncertain as to what crime or crimes were committed. However, the prosecutor has the exclusive power to select the crime with which he will charge the defendant. In some instances, selection might be made not because it is felt that the facts fit the crime selected, but because the prosecutor will be in a better position to plea bargain if the more serious offense is charged. But even where this is not a consideration affecting the prosecutor's choice, his initial version of the criminal episode frequently will turn out to be mistaken and when all the evidence is in some crime other than that charged may more nearly fit the facts. When this occurs, there should be enough flexibility in our criminal procedures to permit the jury to decide whether a lesser offense was committed, if the defendant has no objection.
Perhaps in most cases the defendant would not seek an instruction on another offense unless it was in fact a lesser-included offense as traditionally defined. It seems likely that generally a defendant would not seek an instruction on a lesser offense unless the offense was (1) a lesser offense, and (2) the conviction for the lesser offense would preclude a conviction for the greater. Both of these conditions, of course, are met where the offense fits the traditional definition of a lesser-included offense. But there are other situations where such conditions are not met and yet the defendant may seek, and deserve to have, an instruction on an offense not charged.[4]
Where the defendant is charged with burglary and also the crime which he is alleged to have intended to commit in breaking and entering, he is vulnerable to conviction for both crimes. If he is charged only with burglary with the intent to commit theft, the crime of theft would not be a lesser-included offense and the defendant could not be convicted of the latter crime, nor could defendant request an instruction on theft. However, a defendant apprehended with goods of a value less than $200 and who defends on the ground that he neither entered the premises wrongfully nor stole the goods, might request an instruction permitting the jury to decide that he was guilty of second degree theft but not burglary. He would not be entitled to an instruction on second degree theft if the traditional rule is applied, because second degree theft is not a lesser-included offense within the crime of burglary. Is there any reason for precluding the submission of the issue of theft to the jury, it being understood that the jury could find the defendant guilty of both burglary and theft?[5] I can see no reason for refusing such a request.
Nor is there any reason for denying defendant's requested instruction in the present case. Defendant's version of the facts supported conviction of the crime of theft by receiving, which is not a lesser-included offense within the crime of burglary. I can think of no reason for precluding the jury from consideration of the evidence on the issue of whether defendant committed theft by receiving rather than burglary.
The same option should be open to the defendant in any prosecution where the evidence rebutting the prosecution's version of the crime charged would permit the jury to find defendant guilty of another *1069 offense. As I have suggested above, the instances may be few in which a defendant would request an instruction on a crime not constituting a lesser-included offense. However, I can think of various factual situations in which the request for such an instruction might be made. Thus, where the defendant is charged with criminal activity in drugs (ORS 167.207), the evidence may warrant an instruction on criminal drug promotion (ORS 167.222). Cf., State v. Montigue, Or. App., 75 Adv.Sh. 250, 530 P.2d 556 (1975). Or where defendant is charged with carrying a dangerous weapon with intent to use it (ORS 166.220(2)), the evidence might warrant an instruction on the lesser crime of carrying a concealed weapon (ORS 166.240). Similarly, one charged with knowingly having possession of a stolen motor vehicle (ORS 481.990(6)) might well request an instruction on the lesser crime of theft.
In the illustrations above I have assumed that the defendant would seek an instruction only where a lesser offense is sought to be submitted. It is possible that even where the offense is not a lesser one, defendant may wish to have the jury pass upon the issue. If the evidence warrants the submission of that issue, there is no reason for withholding it from the jury.
The fear is expressed that if the defendant is not confined to lesser-included offense instructions, he may insist upon instructions solely for the purpose of causing jury confusion or to create opportunities for reversible error. Thus, it is said that a defendant charged with murder might insist upon an instruction in the crime of jay-walking. A departure from the traditional rule confining the jury's consideration to lesser-included offenses does not mean that the defendant is to have an open-ended right to any instruction he requests.
I have already suggested a limitation on the defendant's right to an instruction an offense not charged in the accusatory instrument. The limitation stems from the principle recognized in this opinion that the defendant should have a right to share in the process of framing the charges submitted to the jury, if there is evidence supporting his version of the facts pointing to a crime not charged. When the defendant asks for an instruction of an offense not charged, he does so to rebut and contradict the state's version of what happened and what crime was committed. He is hopeful, of course, that the jury will accept his defense of not guilty, but short of that he wants a safeguard against the danger of losing if the jury is forced to decide between acquittal and guilt when there is not sufficient evidence to prove the crime charged but sufficient evidence to prove a lesser offense.
To serve this legitimate end, the defendant's instruction must, therefore, be inconsistent with the state's instruction on the offense charged. The application of this test precludes instructions on extraneous offenses which do not serve to rebut the offense charged, thus providing a reasonably precise rule and avoiding the danger of giving the defendant a tool for confusion and possible reversible error. Although the rule I propose is not found in any other jurisdiction,[6] I feel that it is required to bring the law relating to lesser-included *1070 offenses into a rational system of justice. The majority opinion raises the spectre of confusion which it sees as flowing from the adoption of the rule I propose. It is feared that the defendant will concoct a variety of explanations pointing to lesser offenses all of which will confuse the jury. One answer to this is that defendants in criminal cases already exhibit great ingenuity in presenting a considerable variety of evidence supporting their interpretation of the criminal episode out of which the charge arises. I doubt that any greater confusion will arise as a result of giving the defendant greater freedom in requesting instructions on lesser offenses. As is true in most cases where a change in criminal procedure is proposed, we do not know what complications may result from its adoption. I take the view that if a change is indicated we should take the chance of trying out a new rule; if it proves unworkable, we can always retract it or modify it. There should be room for experimentation in the judicial law-making process.
I would hold the defendant's requested instruction should have been given and that the judgment should be reversed and remanded for a new trial.
HOLMAN, J., joins in this opinion.
NOTES
[1] The defendant requested the following instruction:

"I instruct you that you may also consider the lesser included offense of Theft in the Second Degree by Receiving. The State, of course, still has the burden of proving each and every element of this crime beyond a reasonable doubt as I have already defined that term. The elements of the lesser included crime of Theft in the Second Degree by Receiving are the following:
"1. That the defendant, Billy Walker Washington, unlawfully and knowingly received, retained, concealed or disposed of the property of Judy DeVine, knowing that the property had been stolen from Judy DeVine.
"2. That at the time of this receipt, retention, concealment, or disposal, if any, Billy Walker Washington had the intent to deprive Judy DeVine of the said property or to appropriate the said property to himself.
"3. That the crime, if any, occurred on February 14, 1974.
"4. That the crime, if any, occurred within Multnomah County, State of Oregon.
"If the State fails to prove any one or several of the elements of the lesser included offense of Theft in the Second Degree by Receiving then you are required to return with a verdict of Not Guilty.
ORS 164.095 ORS 164.015"
[2] For example, this limitation would preclude the giving of instructions on reckless driving and/or failure to yield right of way under an indictment charging criminally negligent homicide if the evidence were clear that defendant's reckless conduct caused the death of another person. Similarly, if a woman were charged with the murder of her child on the basis that she recklessly caused the child's death by failing to obtain needed medical and physical care, and by abandoning the child in a place where medical care was not available, and if the fact that her conduct caused the child's death is not disputed, an instruction as to abandonment or criminal nonsupport would clearly be improper. Any suggestion to the contrary arising from State v. Bobkiewicz, 20 Or. App. 479, 532 P.2d 256 (1975), or State v. Devereaux, 20 Or. App. 358, 531 P.2d 749 (1975), should be disregarded.
[3] Defendant cites State v. Taylor, 17 Or. App. 499, 522 P.2d 499 (1974), for the proposition that theft is a lesser included offense under an indictment charging breaking and entering with the intent to commit theft. In that case, however, the attorney general's brief conceded the lesser included offense issue  for reasons which are not apparent  and argued only that the evidence was not sufficient to support such an instruction. In any event, to the extent of any inconsistency with this opinion, that decision is expressly overruled.
[4] Of course, if the indictment had contained two counts charging both burglary and theft, an instruction on second degree theft as a lesser included offense to the theft count would then be proper if the evidence adduced at trial would support it.
[5] "Essentially the same problem underlies the included offenses area when the defendant wishes instructions on less serious offenses not listed in the information. In most instances, what the defendant is after is a smorgasbord of counts for the jury, in the hopes that it will chose a light salad rather than a heavy meat course. * * *" George, Lesser Included Offenses in Michigan, 1 Det. L.Rev. 35, 37 (1975). (Emphasis added.)
[1] ORS 136.465, which provides, "In all cases, the defendant may be found guilty of any crime the commission of which is necessarily included in that with which he is charged in the accusatory instrument or of an attempt to commit such crime" limits the state's right to prosecute without notice to the defendant. It does not purport to limit the defendant's right to instructions on crimes not charged in the accusatory instrument.
[2] Originally, the lesser-included offense instruction was viewed primarily as serving the prosecution's purpose of securing a conviction when the state's proof of an element of the greater offense failed. Barnett, The Lesser-included Offense Doctrine: A Present Day Analysis for Practitioners, 5 Conn.L. Rev. 255, 268, n. 74 (1972).

The determination of whether a lesser crime is included has not been uniform. A minority of jurisdictions employ the "statutory approach" which consists of an abstract examination of the elements of the two crimes without reference to either the allegations of the indictment or proof at trial. See, e.g., United States v. Carey, 475 F.2d 1019, 1022 (9th Cir.1973):
"* * * To be necessarily included in the greater offense the lesser offense must be such that it is impossible to commit the greater without first having committed the lesser. The offense must not require some additional element not needed to constitute the greater. Moreover, the lesser offense must be included in, but not be encompassed by, the greater offense."
The majority of jurisdictions employ a "pleadings approach" which consists of examination of the accusatory instrument to determine whether its description of the manner in which the greater offense was committed contains allegations constituting a charge of the lesser offense. See, 4 Anderson, Wharton's Criminal Law and Procedure, § 1888 (12th ed. 1957).
A good example of the contrast between the two approaches is found in State v. Everett, 157 N.W.2d 144 (Iowa 1968), a five to four decision in which the majority applied the statutory approach and the minority applied the pleadings approach.
Oregon appears to have adopted the pleadings approach. ORS 136.465. See, State v. Kelly, 41 Or. 20, 68 P. 1 (1902). It should be noted that the pleadings approach does not guarantee to the defendant the right to instruction on a lesser crime included in the manner he is thought to have committed the crime charged. As a practical matter, the prosecutor retains the power to achieve the restrictive effect of the statutory approach by refraining from alleging the manner in which the crime was committed. See, State v. Shadley/Spender/Rowe, 16 Or. App. 113, 517 P.2d 324 (1973) (charge simply of "furnishing" dangerous drugs sufficient to state a crime) and State v. Jim/White, 13 Or. App. 201, 508 P.2d 462 (1973) (charge of theft, without additional specificity, sufficient to state a crime). Thus, the pleadings may be as restrictive as the statute if the prosecutor chooses to make them so.
[3] Instructions are intended to aid the jury in its deliberations. Thus, an instruction on a lesser crime, like any other instruction, need not be allowed merely because it is supported by the evidence. In addition, the instruction must be relevant to material issues and not tend needlessly to confuse the jury.
[4] It should be noted that the manner in which formerly independent but related offenses are grouped into a single offense under Oregon's present criminal code has the unintended effect of reducing the number of necessarily included offenses. The theft statute (ORS 164.015), for example, includes in one offense conduct which formerly constituted the separate crimes of larceny, larceny by trick, embezzlement and extortion. Offenses which would formerly have been necessarily included in one of the components of theft would not now necessarily be included in theft.
[5] Under State v. Woolard, 259 Or. 232, 484 P.2d 314, 485 P.2d 1194 (1971), a defendant could not be sentenced for both crimes. It is this fact that may prompt a defendant to request an instruction on a lesser but not included offense where burglary is charged, since he would risk nothing by the submission of the theft issue.
[6] United States v. Whitaker, 144 U.S.App. D.C. 344, 447 F.2d 314, 319 (1971) adopts a variation on the pleadings approach which may represent a move toward the approach I would adopt today. In Whitaker, the defendant was charged with burglary which conceivably could be committed without an unlawful entry. The Court of Appeals for the District of Columbia reversed, stating:

"Merely because a burglary can in rare circumstances be accomplished by means of an entry which is `permitted,' does it follow that unlawful entry cannot be considered a lesser included offense of burglary in the usual case, as is this one, where the entry is undeniably unauthorized? * * *
"A more natural, realistic and sound interpretation of the scope of `lesser included offense,' in line with our own views on the subject, is that defendant is entitled to invoke Rule 31(c) when a lesser offense is established by the evidence adduced at trial in proof of the greater offense, with the caveat that there must also be an `inherent' relationship between the greater and lesser offenses, i.e., they must relate to the protection of the same interests, and must be so related that in the general nature of these crimes, though not necessarily invariably, proof of the lesser offense is necessarily presented as part of the showing of the commission of the greater offense. [Footnote omitted.]"