Argued and submitted December 23, 1985, affirmed April 9, reconsideration denied May 23, petition for review denied June 17, 1986 (301 Or 240)

STATE OF OREGON,
*Respondent,*

*v.*

JEFFREY LEE HASSMAN,
*Appellant.*

(85-123, 85-179; CA A35724)

717 P2d 245

Stephen J. Williams, Deputy Public Defender, Salem, argued the cause for appellant. With him on the brief was Gary D. Babcock, Public Defender, Salem.

Douglas F. Zier, Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were

Dave Frohnmayer, Attorney General, and James E. Mountain, Jr., Solicitor General, Salem.

Before Gillette, Presiding Judge Pro Tempore, and Van Hoomissen and Young, Judges.

GILLETTE, P. J., Pro Tempore.

## GILLETTE, P. J., Pro Tempore

Defendant seeks reversal of two separate convictions, one for unauthorized use of a motor vehicle, ORS 164.135, and one for escape in the second degree. ORS 162.315. We affirm.

■ Defendant first argues that his motion for a mistrial should have been granted in his trial for, *inter alia,* unauthorized use of a motor vehicle. He argues that a prosecution witness' statement implied that defendant had been incarcerated and thereby prejudiced him by improperly interjecting other crimes or bad acts evidence into the trial.

A motion for mistrial is directed to a trial court's discretion. *State v. Burke,* 247 Or 155, 156, 427 P2d 760 (1967). An appellate court will review such a ruling only for abuse of discretion to determine

> "if the remarks presented to the jury would have a likelihood of prejudicing the rights of the defendant to have a fair and impartial trial. If the court determines the probability of prejudice exists it may grant the mistrial or may seek to remove the prejudicial impact of the remarks by a curative instruction." *State v. Flores,* 31 Or App 187, 190, 570 P2d 94 (1977).

In this case, the trial court struck the testimony of the witness and instructed the jury to disregard it. We conclude that the trial court did not abuse its discretion. We affirm defendant's conviction for unauthorized use of a motor vehicle.

Defendant next argues that the trial court erred in refusing to give his requested instructions for attempted escape in the second degree and escape in the third degree in his trial for, *inter alia,* escape in the second degree. This assignment necessitates a review of the facts which, for the purposes of this opinion, we accept as presented in defendant's brief.

On the night of January 17, 1985, Officer Hill of the Coos Bay Police Department encountered an oncoming car which failed to dim its headlights and then swerved in its own lane. When Hill turned around to follow, the car accelerated. Hill decided to investigate for drunk driving and turned on his overhead lights, but the car continued on for a short distance. Hill could see that there were two people in the car and determined that the driver was male and the passenger was

female. When the car eventually pulled into a parking lot, Hill saw the driver switch places with the passenger. Hill walked to the passenger side of the car and noticed defendant lying on his side in the passenger seat. After repeatedly requesting defendant to get out of the car and receiving no response, he opened the door of the car and, at that time, smelled a "heavy odor of alcoholic beverage."

Hill twice requested defendant to get out of the car, again getting no response. After the second request, the woman, now in the driver's seat, "almost pushed" defendant out of the car as she got out from the passenger side. Although defendant at first seemed to be dazed, he soon began shouting obscenities at Hill, denied driving the car and asked why he was being harassed. Concerned for his safety, Hill ordered defendant to put his hands on the car; defendant refused. Hill repeated his request several times, but defendant refused to cooperate and continued his shouting. The woman companion was also yelling at Hill.

Hill decided to take defendant into custody but, as he moved in to do so, defendant pushed against him and tried to walk past him. Hill, however, grabbed defendant and placed him in a choke hold. Defendant struggled, eventually breaking free and running across the parking lot. Hill started after defendant but returned to his patrol car to release his patrol dog. He gave the dog the command to go after defendant. Both Hill and the dog gave chase.

Hill saw defendant and his dog go over a hill. He next saw defendant and his dog at the bottom of the hill running across a flat, swampy area. When he eventually reached him, defendant was slumped over a log and the dog was standing nearby. Another officer who had responded to an earlier request by Hill for a backup arrived at about the same time and handcuffed defendant, who was then taken to the police station.

Defendant was charged with escape in the second degree pursuant to ORS 162.155, which provides, in pertinent part:

"(1) A person commits the crime of escape in the second degree if:

"(a) The person uses or threatens to use physical force escaping from custody."

The trial court refused to give defendant's requested instructions for attempted escape in the second degree[1] and escape in the third degree.[2]

■ Defendant argues that sufficient evidence was presented to support his requested instructions. He cites two statutes as relevant to this case: ORS 136.460, pertaining to degrees of crimes, and ORS 136.465, pertaining to necessarily included offenses. ORS 136.460 provides:

"Upon a charge for a crime consisting of different degrees, the jury may find the defendant not guilty of the degree charged in the accusatory instrument and guilty of any degree inferior thereto or of an attempt to commit the crime or any such inferior degree thereof."

ORS 136.465 provides:

"In all cases, the defendant may be found guilty of any crime the commission of which is necessarily included in that with which he is charged in the accusatory instrument or of an attempt to commit such crime."

The Oregon Supreme Court considered those statutes in *State v. Washington*, 273 Or 829, 543 P2d 1058 (1975), and concluded:

"The single limitation on the right of either the prosecution or the defendant to request lesser included offense instructions under these statutes is that there must be evidence, or an inference which can be drawn from the evidence, which supports the requested instruction so that the jury could rationally and consistently find the defendant guilty of the lesser offense and innocent of the greater." 273 Or at 836.

*See also State v. Davis*, 44 Or App 549, 551-52, 606 P2d 671 (1980). In support of his requested instruction for attempted escape in the second degree, defendant argues that, because

---

[1] ORS 161.405(1) provides a definition of "attempt":

"A person is guilty of an attempt to commit a crime when he intentionally engages in conduct which constitutes a substantial step toward commission of the crime."

[2] ORS 162.145 provides, in pertinent part:

"A person commits the crime of escape in the third degree if he escapes from custody."

Hill was in continuous pursuit, the jury could have found that he was in "constructive restraint"[3] at all times and that he therefore only took a substantial step toward, but never succeeded in, escaping. A similar argument was rejected by this court in *State v. Fitzgerald,* 16 Or App 376, 518 P2d 678 (1974), where we held that testimony indicating that defendant was only 10 or 20 steps ahead of a prison guard was sufficient to find defendant guilty of escape in the second degree. 16 Or App at 379. Here, testimony indicates that defendant actually got out of sight of Hill and that Hill felt it necessary to use his patrol dog to catch defendant. Defendant offers no other version of the facts more favorable to his theory. It was not error to refuse defendant's requested instruction for attempted escape.

■    Defendant argues, in the alternative, that his requested instruction for escape in the third degree should have been given, because he did not use physical force to escape. Hill testified:

"As I moved up to [defendant], he pushed against me and tried to go past me. As he did so, I caught him as he was going by me on the left side.

"* * * * *

"As I caught him he attempted to break loose, push past me and get away. I kept just bringing him back and holding onto him and he kept trying to break my grip. * * * He continued to struggle. I had to readjust my grip a number of times just to hold onto him to keep him from going anywhere.

"* * * * *

"Well, again he continued to twist and try to break my grip. Eventually he elbowed me in the groin. He continued again twisting and when he struck me in the groin I lost my balance and fell to the ground, landing on my left knee. As I was down on the ground, he broke my grip and got away, stood up and punched me twice on the top of the head with a closed fist."

The passenger in the car testified that, as she got out of the car, she saw that defendant was in a choke hold.

---

[3] ORS 162.135(3) provides:

" 'Custody' means the imposition of actual or constructive restraint by a peace officer pursuant to an arrest or court order, but does not include detention in a correctional facility, juvenile facility or a state hospital."

"Q. [By district attorney] Now, tell us what you remember outside the car.

"A. [Witness] Uh, Jeff [the defendant] was trying to get away * * *.

"Q. How did he try to get away?

"A. He was just trying to get out of [the choke hold].
"* * * * *

"Q. What force was he using to get out of that?

"A. Just kind of squirming around.

"Q. When he squirmed, what were his arms doing?

"A. He put them up * * * trying to get out from under them or around them.

"Q. He was pulling on his —

"A. He was pulling on his hands, his arm, from around his neck."

The witness then testified that she left the scene to make a phone call. On cross-examination by defendant, she testified:

"Q. What did Jeff look like? What was he doing with his hands with the officer having the choke hold?

"A. He was trying to push — push him [sic] arm up away from around his neck.

"Q. You mean he was trying to push the officer's arm from —

"A. From around Jeff's neck."

On direct examination by his attorney, defendant testified that, after Hill put him in the choke hold, he remembers "trying to twist to get away" and after "landing on the ground," getting up and running.

In order to have found defendant innocent of the greater offense and guilty of the lesser, the jury would have had to disbelieve completely the evidence in this case. To do so would have been neither rational nor consistent, considering the testimony of the witnesses regarding defendant's attempts to get out of the officer's choke hold. All the attempts necessarily involved some degree of force. It was not error to refuse the requested instruction. *See State v. Palaia,* 289 Or 463, 475, 614 P2d 1120 (1980).

Affirmed.