Argued and submitted March 31, affirmed June 4, reconsideration denied July 18, petition for review denied August 26, 1986 (301 Or 667)

## STATE OF OREGON,
*Respondent,*

*v.*

## GLENN F. JORDAN, JR.,
*Appellant.*

(31323; CA A37508)

719 P2d 1327

Diane L. Alessi, Deputy Public Defender, argued the cause for appellant. With her on the brief was Gary D. Babcock, Public Defender, Salem.

Stephen F. Peifer, Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Dave Frohnmayer, Attorney General and James E. Mountain, Jr., Solicitor General, Salem.

Before Warden, Presiding Judge, and Van Hoomissen and Young, Judges.

VAN HOOMISSEN, J.

## VAN HOOMISSEN, J.

Defendant appeals his conviction for unauthorized use of a vehicle. ORS 164.135.[1] He contends that the trial court erred in failing to suppress his statement to police and in denying his motion for a mistrial. We affirm.

On February 4, 1984, Albany police officer Antonson interviewed defendant regarding a recent burglary and car theft in St. Helens. At trial, Antonson read the statement:

" 'We meet Joe' —

— a question mark for the last name —

" 'at the Portland Mission drop in center where as we all, me, Frank, Ken, who came in as a friend of Joe's, at the last minet [sic] decided to leave. We thumbed to St. Helens where Joe said he knew someone, after we got off the right road (I 5) by accident - and our arrival in St. Helens. He said he would get a car. Later he met back with us in store. Agreed we left in car after we got on Hwy. He started driving crazy. I asked what was going on. *He started bragging about the burglary and car theft.* We went to Tacoma Washington where Joe ditched the car and we stayed there.' " (Emphasis supplied.)

On February 9, St. Helens police officer Salle attempted to interview defendant about the same burglary and car theft. After Salle had advised defendant of his *Miranda* rights, defendant stated that he wanted to speak to his attorney. Salle terminated the interview and advised the jailer that defendant wanted to speak to his attorney. The jailer replied that, because it was then 12:15 p.m., defendant's attorney would probably be at lunch and, therefore, unavailable. Salle then asked defendant what he wanted to do. Defendant then said that he would talk to Salle about the crimes. Thereafter, defendant made inculpatory statements about his being a passenger in the stolen car.

■ ■    The state concedes that, because Salle resumed

---

[1] ORS 164.135 provides, in part:

"(1) A person commits the crime of unauthorized use of a vehicle when:

"(a) The person takes, operates, exercises control over, *rides in* or otherwise uses another's *vehicle,* * * * without consent of the owner;

"(2) Unauthorized use of a vehicle, * * * is a Class C Felony." (Emphasis supplied.)

questioning after defendant's unequivocal invocation of his right to counsel, defendant's statements should have been suppressed. *See Michigan v. Jackson,* 475 US ___, 106 S Ct 1404, 89 L Ed 2d 631 (1986); *Edwards v. Arizona,* 451 US 477, 484, 101 S Ct 1880, 68 L Ed 2d 378, *reh den* 452 US 973 (1981); *State v. Kell,* 77 Or App 199, 712 P2d 827 (1986); *State v. Crawford,* 73 Or App 53, 698 P2d 40 (1985); *State v. Barmon,* 67 Or App 369, 679 P2d 888, *rev den* 297 Or 227 (1984). The state argues, however, that the error was harmless beyond a reasonable doubt in the light of defendant's earlier inculpatory statement to Antonson regarding the same charges, which statement is unchallenged on appeal. *Chapman v. California,* 386 US 18, 87 S Ct 824, 17 L Ed 2d 705, *reh den* 386 US 987 (1967);[2] *State v. Van Hooser,* 266 Or 19, 511 P2d 359 (1973); *see also State v. Stilling,* 285 Or 293, 590 P2d 1223 (1979); *State v. Gainer,* 70 Or App 199, 689 P2d 323 (1984).

Unauthorized use of a vehicle requires only that the defendant ride in a vehicle that he knows is stolen. ORS 164.135(1)(a). Before he spoke to Salle, defendant admitted to Antonson that he had ridden in a car that he knew was stolen. Salle's evidence, therefore, was merely cumulative of that fact. Defendant's February 4 confession, when coupled with the

---

[2] In *Delaware v. Van Arsdall,* 475 US ___, 106 S Ct 1431, 89 L Ed 2d 674, 684-85 (1986), the United States Supreme Court stated:

"As we have stressed on more than one occasion, the Constitution entitles a criminal defendant to a fair trial, not a perfect one. In *Chapman,* this Court rejected the argument that all federal constitutional errors, regardless of their nature or the circumstances of the case, require reversal of a judgment of conviction. The Court reasoned that in the context of a particular case, certain constitutional errors, no less than other errors, may have been 'harmless' in terms of their effect on the fact-finding process at trial. Since *Chapman,* we have repeatedly reaffirmed the principle that an otherwise valid conviction should not be set aside if the reviewing court may confidently say, on the whole record, that the constitutional error was harmless beyond a reasonable doubt. The harmless-error doctrine recognizes the principle that the central purpose of a criminal trial is to decide the factual question of the defendant's guilt or innocence, and promotes public respect for the criminal process by focusing on the underlying fairness of the trial rather than on the virtually inevitable presence of immaterial error.

"At the same time we have observed that some constitutional errors—such as denying a defendant the assistance of counsel at trial, or compelling him to stand trial before a trier of fact with a financial stake in the outcome—are so fundamental and pervasive that they require reversal without regard to the facts or circumstances of the particular case." (Citations omitted.)

physical evidence in the record and the other testimony, provided substantial proof of his guilt. We conclude that any error in admitting the February 9 statement was very unlikely to have changed the result of the trial and that it was harmless beyond a reasonable doubt. *Chapman v. California, supra; State v. Van Hooser, supra.*

■ Defendant next contends that the trial court erred in denying his motion for a mistrial after Antonson mentioned that another case against defendant was pending in Linn County. At trial, Antonson testified, reading defendant's statement to the jury:

> " 'The next day I dumped them because they could not get the'
>
> "—I can't read the word. It appears to be h-e-n-t, but I'm sure —
>
> " 'to get lost. I stayed at the mission thereafter.'
>
> "Q.   Hint?
>
> "A.   That could be. Could be hint. Everything else that's written on this form refers to our case in Linn County."

Defense counsel objected and moved for a mistrial. The trial court denied that motion.

A motion for a mistrial should be granted when it is apparent that the challenged aspect of the conduct of the trial has interfered with a defendant's ability to obtain a fair adjudication of the facts. *State v. McFarland,* 30 Or App 93, 97-98, 566 P2d 539 (1977). The trial court is given discretion in deciding whether to grant a mistrial, because it is in the best position to determine the impact of the alleged impropriety. *State v. Blake,* 53 Or App 906, 633 P2d 831 (1981), *rev dismissed* 292 Or 486 (1982); *State v. McFarland, supra.* Antonson's brief passing reference was inadvertent; it did not refer to any specific charge pending against defendant. Further, any prejudice could have been rectified by a curative instruction. The trial court offered defendant a curative instruction, but he declined. We find no abuse of discretion. *See State v. Hassman.* 78 Or App 496, 717 P2d 245, *rev den* 301 Or 240 (1986); *State v. Stanley,* 30 Or App 33, 36, 566 P2d 193, *rev den* 280 Or 1 (1977).[3]

---

[3] In *Stanley,* we explained:

"[R]ulings on motions for mistrial are addressed to the sound discretion of the trial court. *State v. Smith,* 4 Or App 261, 263-64, 478 P2d 417 (1970).

Affirmed.

---

"It is our function on appeal to review those rulings only for abuse of discretion. In the context of trial, abuse of discretion means the tolerance of uninvited prejudice. Prejudice, as it may flow from the denial * * * of a mistrial, means a reasonable possibility that the judge or jury will be influenced in the performance of the fact-finding function by the irregular event. Whether that reasonable possibility exists must initially be determined by the trial court. The trial court is in the best position to determine the effect of the irregular event because such a determination must often take into account a sense of the courtroom atmosphere, the dynamics of the trial, the appearance of the parties and witnesses, and other institutional and subjective factors which are seldom evident to appellate judges reading a transcript. Furthermore, the trial court is in a position to cure or minimize prejudice by taking immediate remedial action, whereas the only remedy available to the appellate court, reversal, is both late and drastic. Therefore the appellate court must defer to the trial court in matters of discretion unless it concludes as a matter of law, that is, beyond reasonable dispute, that the trial court abused its discretion by improperly tolerating uninvited prejudice." 30 Or App at 36.