# STATE OF OREGON,
*Respondent,*

*v.*

# TERRY JAMES WHITE,
*Appellant.*

## (10-83-01183; CA A30237)

707 P2d 1267

Edward E. Hill, Eugene, argued the cause for appellant. With him on the brief was Larry O. Gildea, P.C., Eugene.

Thomas H. Denney, Assistant Attorney General, argued the cause for respondent. With him on the brief were Dave Frohnmayer, Attorney General, and James E. Mountain, Jr., Solicitor General, Salem.

WARDEN, J.

Joseph, C. J., dissenting.

Newman, J., dissenting.

## WARDEN, J.

Defendant appeals from his conviction for aggravated murder, ORS 163.095, assigning as error the trial court's failure to grant his motion for mistrial, its failure to give his requested instructions on manslaughter and its denial of his motions for a judgment of acquittal on the aggravated murder charge and for a change of venue. We affirm.

Defendant was one of three persons charged with the December, 1982, murder of a Springfield millworker, Robert Harris, who died of injuries sustained in an explosion in the parking lot of the Rosboro Lumber Company. The explosion resulted from dynamite and a blasting cap which had been placed in the victim's car and wired to a car radio wire; the dynamite apparently was detonated when the victim switched on the car's ignition.

Defendant, Michael Kell and Barbara Harris (the victim's wife) were indicted for aggravated murder under ORS 163.095(2)(c):

"The defendant committed murder by means of an explosive as defined in ORS 164.055(2)(a)."

Kell and Harris were prosecuted in separate trials in Lane County in May, 1983. Defendant was called as a witness by the state in the trial of Harris and, although he was offered statutory immunity, he asserted his constitutional right against self-incrimination and refused to testify.[1] Media coverage of the Kell and Harris trials was extensive and included reports of defendant's refusal to testify in the Harris trial. Defendant moved for a change of venue on the basis of prejudice from the pre-trial publicity; the motion was denied, but defendant's trial was postponed to August, 1983.

Defendant's first assignment of error arises from comments made by the prosecutor during the state's opening statement:

"Well, during [the Barbara Harris] trial the Defendant—

---

[1] Defendant was found in contempt for refusing to testify. That conviction was reversed, *State v. White*, 69 Or App 210, 683 P2d 1038 (1984), on the basis of *State v. Soriano*, 68 Or App 642, 684 P2d 1220, *aff'd* 298 Or 392, 693 P2d 26 (1984), in which we held that the statutory use and derivative use of immunity provided in *former* ORS 136.619 (*amended by* Or Laws 1985, ch 709, § 1), was inadequate under Or Const, Art I, § 12.

you have heard he is going to testify here—the Defendant testified, or was called to testify but refused to do so."

Defendant timely moved for a mistrial. The trial court denied the motion, but admonished the jury to disregard the comments:

"Ladies and gentlemen, before we recessed, Mr. Barnes had made some comment in his opening statement about Mr. White having been called to testify in the Barbara Harris matter and not having testified, chosen not to do so.

"I have ruled that that matter is not relevant in this case. You will not be hearing any evidence about that, and that there are any number of reasons why that may have occurred would have nothing to do with any that is probative of the evidence in this case. So in no way are you to take that into account or in any way to discuss or consider what Mr. Barnes has said in regard to that. It's not evidence in this case. It's not to be taken by you as any evidence of the case or have any place in this case.

"[I t]rust that each one of you will be able to do that. It's important that you do that."

■　　　　Defendant argues that the prosecutor's unambiguous comment on defendant's silence in his co-defendant's trial was improper, that its prejudicial effect was not diminished by the court's instruction and that it was reversible error for the trial court to deny his motion for a mistrial. *See Griffin v. California,* 380 US 609, 615, 85 S Ct 1229, 14 L Ed 2d 106 (1965); *State v. Wederski,* 230 Or 57, 368 P2d 393 (1962). We disagree. Assuming that the prosecutor's comment on defendant's privileged refusal to testify in the earlier trial was improper, the comment was not so prejudicial that a mistrial was required in this trial, in which defendant testified at length.[2] The trial court stressed in its curative instruction that the prosecutor's remarks were not to be taken into account or to have any place in this case; that instruction was sufficient

---

[2] The state does not concede that there was any impropriety but argues that the remark "was intended to suggest the inconsistency between defendant's past and present position, rather than to comment adversely on his invocation of the privilege against self-incrimination." We understand that argument to suggest that, upon defendant testifying in his own behalf, the state could question him regarding his being called as a witness and refusing to testify in the earlier trial as impeachment of his testimony in the present case. We are not prepared to say that impeachment in that manner would be improper.

to remove any potential prejudice that might have resulted from them. *See State v. Macomber,* 18 Or App 163, 524 P2d 574, *rev den* (1974). The trial court did not abuse its discretion in denying defendant's motion for a mistrial.

In his second assignment, defendant contends that the trial court erred in failing to give his requested instruction on manslaughter in the first degree. The relevant statutory provision is ORS 163.118(1)(a):

"(1) Criminal homicide constitutes manslaughter in the first degree when:

"(a) It is committed recklessly under circumstances manifesting extreme indifference to the value of human life * * *."

In *State v. Miller,* 53 Or App 493, 496, 632 P2d 493 (1981), we discussed the criteria for an instruction on a lesser included offense:

"A defendant is entitled to an instruction on a lesser included offense if there is a disputed issue of fact enabling the jury to find that all the elements of the greater offense have not been proved, but that all the elements of the lesser offense have been proven. This entitlement is subject to the qualification that the lesser included offense must be one which is included either in the statutory framework concerning the greater and lesser offense or in the accusatory instrument itself." (Citation omitted.)

Entitlement to a lesser included offense instruction, however, requires an evidentiary basis:

"The single limitation on the right of either the prosecution or the defendant to request lesser included offense instructions under these statutes is that there must be evidence, or an inference which can be drawn from the evidence, which supports the requested instruction so that the jury could rationally and consistently find the defendant guilty of the lesser offense and innocent of the greater." *State v. Washington,* 273 Or 829, 836, 543 P2d 1058 (1975). (Citations and footnote omitted.)

■ Although the offense of manslaughter in the first degree is embraced within the framework of the murder statutes, the evidence in this case provides no basis for the requested instruction. The undisputed evidence that dynamite was connected to the wiring of the victim's vehicle in

such a manner as to explode when the car was started permits no other inference but that the act was done intentionally for the specific purpose of causing death or serious injury to the person who started the vehicle. Defendant does not contend that there was no intent to kill the victim; the theory of his defense was solely that he was insufficiently involved in the plot or its execution to be criminally responsible for the victim's death at all. He argues that his testimony that he was aware of preparations made for killing the victim and failed to notify the police supports a theory of manslaughter committed recklessly under circumstances manifesting extreme indifference to the value of human life. It does not. If the jury had accepted that evidence, it would have had to find him not guilty. It could not have rationally and consistently found him guilty of manslaughter in the first degree but not guilty of murder if it found him (as it must have) to have been involved at least as an accessory in the bombing of the victim's vehicle. The requested jury instruction was properly refused.

Defendant next assigns error to the trial court's denial of his motion for acquittal on the charge of aggravated murder. The motion was based on the theory that there was no evidence that he personally committed the homicidal act in this case and that he could not be convicted of aggravated murder for "aiding and abetting" a murder committed by means of an explosion, ORS 163.095(2)(c), because constitutional concerns of equal protection mandate that an element of aggravated murder under ORS 163.095(2)(c) be personal commission of the homicide by the defendant.

Defendant reasons as follows. Under ORS 163.115(1)(b), felony murder is committed if a person, acting alone or with others, commits certain enumerated felonies, including arson, and in the course and furtherance of the crime the person or another participant causes the death of a non-participant. To constitute aggravated felony murder under ORS 163.095(2)(d), however, a defendant must *personally* commit the homicide under circumstances described in the felony murder statute. Defendant argues that the act for which he was prosecuted could be characterized as felony murder with arson as the predicate crime and, because he could be convicted of aggravated felony murder only on evidence that he personally committed the homicide, that it would be a violation of equal protection guarantees if on the

same facts he could be convicted of aggravated murder by means of an explosive without proof of his personal commission of the homicide.

We reject defendant's analysis and find no constitutional infirmity in the statutory scheme. Under ORS 163.115(1)(b), all participants in certain enumerated felonies are culpable of felony murder for participating in the felony, regardless of who caused the death. ORS 163.095(2)(d) is designed to enhance the penalty only for the participant or participants who, during the commission of such a felony, also personally and intentionally commit the homicide. *See State v. Reynolds,* 289 Or 533, 539, 614 P2d 1158 (1980). That the homicide constitutes aggravated murder, however, remains dependent on the defendant's participation in the collateral felony, without concern for the manner in which the homicide is accomplished. ORS 163.095(2)(c), however, focuses entirely on the manner in which the victim is killed, *i.e.,* "by means of an explosive."

We conclude that the legislature made a rational distinction between the respective forms of aggravated murder and that the fact that the legislature may have chosen to include as an element personal commission of the homicide under one definition of a crime does not mean that that requirement must be engrafted onto all others. Defendant was charged with intentionally causing the death of the victim by means of an explosive, not with killing him in the course of committing arson. The trial court did not err in refusing to remove the aggravated murder charge from the jury's consideration on the theory that defendant could not be convicted of aggravated murder for aiding and abetting a murder committed by means of an explosive.

In his final assignment, defendant contends that the trial court erred in denying his motion for a change of venue. ORS 131.355. He argues that, because of publicity given the earlier trials, it was unlikely that a jury free of subconscious bias against him could be selected. *See Lambert v. Srs. of St. Joseph,* 277 Or 223, 230, 560 P2d 262 (1977). There was substantial media coverage, and with his motion defendant offered numerous exhibits of news articles from December 3, 1982, through May 18, 1983, including articles about the crime

and the trials of his two co-defendants. In denying the motion on May 23, 1983, the trial court stated:

"I don't have any doubt in my mind that, either now or somewhere soon down the road, we can pick a jury that would be fair and unbiased to hear this case.

"I do have some concerns, this being the third case, that the media coverage has been constant, that in trying three of them back to back there simply is no respite from that. I have little doubt in my mind, however, that it can be accomplished.

"I feel, however, that the passage of time might be beneficial, since we are going to start this third case, we don't know the outcome of the second case yet. I think it would probably serve the Defendant well in this case, and perhaps make everybody's job a little bit easier, to merely postpone this case. I'm prepared to do that. Probably, my initial thought is into the early or mid—not any later than that—August."

■■ A motion for change of venue is addressed to the sound discretion of the trial court, but it should only be granted when there is a reasonable likelihood that prejudical news before trial will prevent a fair trial. *State v. Smith,* 58 Or App 458, 460, 648 P2d 1294 (1982). We have reviewed the news exhibits and, although the coverage was extensive, we cannot say that it was so prejudicial and so pervasive that denial of the motion was an abuse of discretion. The record, moreover, contains no indication that defendant renewed his motion after the continuance. If he still thought it unlikely that an unbiased jury could be selected, he should have moved again for change of venue after the jury was impaneled. *See State v. Bird,* 59 Or App 74, 650 P2d 949 (1982); *State v. Jorgensen,* 8 Or App 1, 7, 492 P2d 312 (1972). The record does not include the jury *voir dire;* therefore, there is nothing before us to suggest that the jury that was impaneled was biased. *See State v. Ness,* 54 Or App 530, 635 P2d 1025 (1981), *aff'd* 294 Or 8, 653 P2d 548 (1982). The trial court's denial of the motion for change of venue was not error.

Affirmed.

**JOSEPH, C. J.,** dissenting.

I join in the dissent by Newman, J.

I also disagree with the majority's rejection of defendant's argument that the trial court erred by refusing to give

his requested manslaughter instruction. If the underlying question were an open one, my answer might differ from the Supreme Court's conclusion that a criminal defendant's request for a lesser included offense instruction may be refused unless there is evidence from which "the jury could rationally and consistently find the defendant guilty of the lesser offense and innocent of the greater." *State v. Washington,* 273 Or 829, 836, 543 P2d 1058 (1975). It seems to me to be a strange rule, in a system that requires the state to prove every element of every crime charged beyond a reasonable doubt, that a defendant may have the factfinder consider a lesser included as well as a greater offense only if he can point to evidence that disproves the elements of the greater offense that are not also elements of the lesser one.

The Supreme Court said in *State v. Palaia,* 289 Or 463, 614 P2d 1120 (1980):

> "It is correct that the jury could disregard the uncontradicted evidence [of the greater offense], irrational as such a result might be. However, the trial court has no obligation to assist the jury in reaching an irrational result by instructing them, in effect, that they can disregard the evidence * * *." 289 Or at 475.

In my view, that statement turns the analysis hindside to. A properly phrased lesser included offense instruction does not tell the jury to disregard evidence of the greater offense, any more than instructions on the presumption of innocence and the state's burden of proof tell the jury that it must acquit the defendant no matter what the evidence shows. The practical import of the statement in *Palaia* is that, to protect the jury from making an irrational finding, the trial court must in effect direct a verdict against the defendant on the elements of the more serious offense that are not common to the lesser included offense.[1] I think that it is alien to our system of criminal justice to hold, as *Palaia* and *Washington* appear to do, that the jury *must* find *any* fact against the defendant that the state is required to prove, or that it *can* find *only* the most aggravated degree of guilt that the state's proof supports.

---

[1]The jury of course retains the option to acquit outright. Nevertheless, because a conviction of a lesser included offense serves as an acquittal of the greater crime charged, *Palaia* and *Washington* effectively allow a directed verdict against the defendant as between the greater and lesser offenses.

Even given the rule of *Palaia, Washington* and similar cases, I think the requested manslaughter instruction should have been given here. The majority states:

> "Defendant does not contend that there was no intent to kill the victim; the theory of his defense was solely that he was insufficiently involved in the plot or its execution to be criminally responsible for the victim's death at all. He argues that his testimony that he was aware of preparations made in the killing of the victim and failed to notify the police supports a theory of manslaughter committed recklessly under circumstances manifesting extreme indifference to the value of human life. It does not. If the jury accepted that evidence it would have to have found him not guilty. It could not have rationally and consistently found him guilty of manslaughter in the first degree but not guilty of murder if it found him (as it must have) to have been involved in the intentional bombing of the victim's vehicle." 75 Or App at 727.

It is undoubtedly correct that defendant's first choice would have been an acquittal rather than a manslaughter or any conviction. It is also correct, as the majority indicates, that the jury did not believe defendant's testimony insofar as it was *completely* exculpatory. However, I do not think it follows that there was *no* evidentiary basis from which guilt of manslaughter rather than murder could be inferred. Defendant's claim was not that he was absolutely unconnected with the events; his theory was that his involvement was so peripheral that it did not give rise to the highest level of criminal accountability. This is not a case like *State v. Miller,* 53 Or App 493, 632 P2d 493 (1981), where the defendant's *only* defense— that he was not at the scene of the crime—had no bearing on what the crime was. The factfinder here, unlike the factfinder in *Miller,* could have inferred that the truth about the nature and extent of defendant's involvement in the crime lay somewhere between defendant's testimony and the state's theory. The majority applies a rigid test, under which a defendant's testimony is insufficient to require the giving of a requested lesser included offense instruction unless the defendant all but says that he did exactly what the requested instruction describes. I do not read *Washington* or its progeny as requiring that a defendant *confess* to a lesser included offense in order to have the jury instructed on it.

It is of particular importance here that the difference

between the state's theory and defendant's bears not only on what events transpired but on what defendant's mental state was. The principal basis for defendant's argument that the jury should have been given the manslaughter instruction is that it could have found that he acted recklessly rather than intentionally. The mental state of a criminal defendant is a uniquely factual question and, whatever logic the *Palaia-Washington* rule might have in other contexts, I strongly question whether the rule can properly be applied to refuse a requested lesser included offense instruction when the dispute over the degree of the defendant's guilt turns on the mental state with which he acted.

Newman, J., joins in this dissenting opinion.

**NEWMAN, J.,** dissenting.

The prosecutor's unambiguous comment in his opening statement on defendant's refusal to testify in the Harris trial prejudiced defendant. Although a trial court has discretion whether to grant a mistrial, "[w]herever it appears that a defendant's ability to obtain a fair adjudication of the facts has been impaired, denial of such a motion is error." *State v. Williams,* 49 Or App 893, 897, 621 P2d 621 (1980). The court should have granted defendant's motion for mistrial.

The prosecutor stated in his opening statement:

"Well, during [the Barbara Harris] trial the Defendant—you have heard he is going to testify here—the Defendant testified, or was called to testify but refused to do so."

Of course, if a defendant refuses to testify at his own trial, the jurors may still choose to speculate on that refusal, although the prosecutor makes no comment. Here, however, as the prosecutor acknowledged, defendant planned to testify at his own trial and did. Except for the prosecutor's remark, the jury would not have known of defendant's refusal to testify in the Harris case. The prosecutor's remark could have caused the jury to draw an inference that it would not otherwise have had any basis to draw.

The prosecutor's comment on defendant's previous silence was also connected to the state's theory that defendant and his accomplices prepared a defense that each at their separate trials would blame the others. The prosecutor's

comment that defendant had refused to testify at Harris' trial would tend to support that theory. It would also tend to contradict defendant's testimony at his own trial of his limited role in the victim's death and was important to the state's attack on his credibility.

The majority contends that the court's "curative" instruction offset any possible prejudice to defendant. The trial court stated:

"Ladies and gentlemen, before we recessed, Mr. Barnes had made some comment in his opening statement about Mr. White having been called to testify in the Barbara Harris matter and not having testified, chosen not to do so.

"I have ruled that that matter is not relevant in this case. You will not be hearing any evidence about that, and that there are any number of reasons why that may have occurred would have nothing to do with any that is probative of the evidence in this case. So in no way are you to take that into account or in any way to discuss or consider what Mr. Barnes has said in regard to that. It's not evidence in this case. It's not to be taken by you as any evidence of the case or have any place in this case.

"[I t]rust that each one of you will be able to do that. It's important that you do that."

Defendant had a constitutional right not to testify in the Harris trial. The prosecutor's comment was improper; the state and federal constitutions forbid it. The court, however, only told the jury to ignore the prosecutor's remark because defendant's silence in the Harris trial was not "probative." The court's instruction did not inform the jury that defendant had a constitutional right to be silent at the Harris trial and that the constitutions forbade the prosecutor from commenting on that silence. *See generally State v. Wederski,* 230 Or 57, 60-61, 368 P2d 393 (1962). Assuming that an instruction of a court may, in certain circumstances, cure prejudice even from a prosecutor's *unambiguous* comment on a defendant's refusal to testify, this instruction did not do so. Moreover, as the Supreme Court has stated:

"Article I, § 12, of the Oregon Constitution guarantees the privilege of the defendant to remain silent. The privilege is meaningless if the state may refer to the defendant's silence with impunity. *Cf. State v. Black,* 150 Or 269, 286, 42 P2d 171, 44 P2d 162.

> "If the only way defendants can be assured fair trials is for appellate courts to reverse an occasional judgment in the face of what well may be overwhelming evidence of guilt, then that is the course we must take. Any other course would encourage the wholesale destruction of the rights of accused persons. While the excessive zeal of the state's counsel in the case at bar did not involve calculated misconduct, and we imply no censure, it is well to remember that in the prosecution of a criminal action the state must stay within the boundaries which experience has proven are necessary to preserve a fair trial for the guilty as well as for the innocent." *State v. Wederski, supra,* 230 Or at 62.

Because the trial court should have granted defendant's motion for a mistrial, I dissent.

Joseph, C. J., and Warren and Young, JJ., join in this dissent.