Argued and submitted April 1, 1986, reversed and remanded May 5, reconsideration
denied June 16, 1987

## STATE OF OREGON,
*Respondent on Review,*

*v.*

## TERRY JAMES WHITE,
*Petitioner on Review.*

(TC 10-83-01183; CA A30237; SC S32313)

736 P2d 552

Edward E. Hill, Eugene, argued the cause for petitioner on review. With him on the petitions was Larry O. Gildea, P.C., Eugene.

Thomas H. Denney, Assistant Attorney General, Salem, argued the cause for respondent on review.

John Henry Hingson III, Oregon City, filed a brief *amicus curiae* on behalf of National Association of Criminal Defense Lawyers.

Before Peterson, Chief Justice, and Lent, Linde, Campbell, Carson and Jones, Justices.

LENT, J.

## LENT, J.

The first issue is whether the prosecutor's remarks in opening statement to the jury concerning defendant's refusal to testify in his co-defendant's trial were so prejudicial that a mistrial should have been declared. We hold that the remarks were that prejudicial and that the instruction given by the trial court in an attempt to cure the effect of the remarks was not sufficient to do so.

The second issue is whether defendant, who was here charged with aggravated murder, was entitled to a jury instruction that would have submitted to the jury whether defendant was guilty of manslaughter in the first degree as a lesser included offense of the charged crime. We hold that defendant was entitled to the instruction.

Robert Harris died of injuries he sustained from an explosion. The explosion resulted from dynamite and a blasting cap that had been placed in his car and wired to the electrical system so that when the victim switched on the ignition the explosion occurred.

Defendant and two other persons, namely, Barbara Harris, the victim's wife, and one named Kell,[1] were charged with the crime of aggravated murder under ORS 163.095(2)(c), which provides:

" '[A]ggravated murder' means murder as defined in ORS 163.115 which is committed under, or accompanied by, any of the following circumstances:

"* * * * *

"(c) The defendant committed murder by means of an explosive * * *."

The indictment charged that the crime was committed as follows:

"The defendant on or about the 2nd day of December, 1982, in the county aforesaid, acting together and in pursuance of a common intent with Michael Dale Kell and Barbara Ann Harris, did unlawfully and intentionally cause the death of Robert Eugene Harris, a human being, by means of an explosive; * * *."

---

[1] *See State v. Kell,* 303 Or 89, 734 P2d 334 (1987).

Separate trials of Barbara Harris and Kell were held before this defendant's trial. The state called this defendant as a witness on the trial of Harris, and he refused to testify, invoking his constitutional rights not to be compelled to be a witness against himself.[2]

## I.

### A. *The Prosecutor's Remarks*

On trial of the instant case, apparently during jury selection, defendant's counsel told the jury that defendant would take the stand to give testimony. During the state's opening statement, the prosecutor said:

"Well during that [Harris] trial the Defendant — you have heard he is going to testify here — the Defendant testified, or was called to testify but refused to do so."

Out of the presence of the jury, defendant's counsel immediately moved for a mistrial. The prosecutor defended his remarks by pointing out that defendant had been held in contempt for failure to testify at the Harris trial when ordered to do so under a grant of immunity. *See* note 2, *supra.* At the time of the colloquy the contempt conviction of this defendant had not yet been reversed. The prosecutor told the trial court why he had made the statement:

"What I was seeking to do in this case is * * * develop the fact that he refused to testify when ordered to do so. In other words, he refused to give a story.

"* * * If he had a legitimate story that would exonerate him and he has it now, why wouldn't he be willing to tell it then? So that was the basis of going into that."

The prosecutor continued his statements to the court by pointing out that in the trials of Harris and Kell, each had pointed to a co-conspirator as being the main culprit, Harris having charged that both Kell and this defendant were the

---

[2] This defendant was offered immunity and was found in contempt for refusing to testify. The conviction for contempt was reversed, *State v. White,* 69 Or App 210, 683 P2d 1038 (1984), on the basis of *State v. Soriano,* 68 Or App 642, 684 P2d 1220 (1984), in which it was held that the immunity provided in *former* ORS 136.619 was inadequate under Article I, section 12, of the Oregon Constitution. This court affirmed *Soriano* by adopting the decision of the Court of Appeals. *State v. Soriano,* 298 Or 392, 693 P2d 26 (1984).

chief perpetrators. The prosecutor characterized this history as being a finger-pointing defense.[3]

The trial judge explained his reasons for denial of the motion for a mistrial:

"Occurs to me that the refusal of Mr. White to testify when ordered to do so really I can't see is probative of anything. What I understand Mr. Barnes [the prosecutor] to be saying is that we are going to retry the Harris case, we are going to retry the Kell case here to show that everybody is pointing a finger at everybody else. I don't think we are going to do that, either.

"Seems to me that there are any number of reasons why — not the least of which Mr. Wold [defendant's counsel] has articulated — is the question of the constitutional — of the statute here, why Mr. White may have chosen to place himself in contempt as opposed to complying with the Court order. Certain compelling logic to me in Mr. Wold's statement that he [Barnes] couldn't have used what he [defendant] would have said at trial here. Why you should be able to use his failure to testify, I guess still mystifies me, when I don't see that it's probative of anything.

"It is not to say that the matter is of the nature that it requires a mistrial. Got all kinds of things that may or may not prove — may or may not come in. Seems to me that at this stage of the proceedings that an indication to the jury that whether or not Mr. White chose to testify in a prior proceeding is not relevant, why he didn't is not relevant and that that's no part of this case.

"My opinion, not — can't see that that's such a major matter that would require releasing the jury and starting over. I am going to deny the motion for mistrial. I do believe that the question of him not testifying earlier is not appropriate. I don't know what Mr. Barnes intends to do in terms of Mrs. Harris and Mr. Kell."

Upon return to the presence of the jury, the trial court instructed as follows:

"Ladies and gentlemen, before we recessed, Mr. Barnes

---

[3] Kell had been convicted. Despite the prosecutor's insistence that Kell's defense had been a finger-pointing defense and was unworthy of belief, the prosecutor called Kell as a witness in the case at bar, apparently hoping to elicit testimony that he did not believe to be accurate. This was never put before the jury because Kell refused to testify.

had made some comment in his opening statement about Mr. White having been called to testify in the Barbara Harris matter and not having testified, chosen not to do so.

"I have ruled that that matter is not relevant in this case. You will not be hearing any evidence about that, and that there are any number of reasons why that may have occurred would have nothing to do with any that is probative of the evidence in this case. So in no way are you to take that into account or in any way to discuss or consider what Mr. Barnes has said in regard to that. It's not evidence in this case. It's not to be taken by you as any evidence of the case or have any place in this case.

"Trust that each one of you will be able to do that. It's important that you do that."

## B. *The Requested Instruction on Manslaughter*

Defendant testified to the following: He was aware that Kell and Barbara Harris had discussed killing her husband. He had attempted to dissuade her. He knew Kell had stolen dynamite and stored it on defendant's property. Kell had indicated to Barbara Harris that Kell could wire the dynamite to the victim's car so as to accomplish the homicide.

As part of defendant's attempt to dissuade Barbara Harris, he told her that Kell did not even know how powerful the dynamite was and how much would be necessary to kill her husband rather than make him a vegetable for life. Defendant accompanied Kell and Barbara Harris to a remote area to test the explosive power of the dynamite by wiring it to Barbara Harris' truck (not the vehicle used in the homicide) so that it exploded by use of the ignition system of the truck.

Later that same night, the three drove in the truck to the mill where the victim was working and where his car was parked, but they left the area. Still later that night, Kell awakened defendant and told him to come take a ride. Defendant got in Kell's car, and Kell drove to the mill parking lot. There Kell left the car for a while and then came back and reached behind the seat and again left the car for a short period of time. Kell and defendant then returned to defendant's house.

Later that day, defendant learned that the victim had been blown up in his car at the mill parking lot.

Defendant denied that he knew that Kell had taken dynamite from the car and set it for explosion in the victim's car. Defendant denied that he had ever intended to kill the victim or plotted with Kell and Barbara Harris to kill the victim.

ORS 163.118(1)(a) provides that criminal homicide constitutes manslaughter in the first degree when it is "committed recklessly under circumstances manifesting extreme indifference to the value of human life." Defendant requested an instruction that would have permitted the jury, if it doubted that defendant was guilty of murder, to find him guilty of manslaughter in the first degree under that statute. The court refused to give the requested instruction.

Defendant was found guilty of aggravated murder and sentenced accordingly.

## II.

On appeal defendant assigned as error the trial court's denial of his motion for a mistrial and its refusal to give his requested instruction that would have submitted to the jury the lesser included offense.[4]

The Court of Appeals considered the case *in banc* and affirmed by a six to four majority. *State v. White,* 75 Or App 722, 707 P2d 1267 (1985). Four judges dissented on the issue of the failure to allow the motion for a mistrial, and two of the four further dissented on the refusal to instruct on the lesser included offense.

The majority assumed that the prosecutor's comment was "improper," but that because defendant testified at length, the comment was not so prejudicial that a mistrial was required; moreover, reasoned the majority, the trial court's curative instruction was sufficient to remove any potential prejudice. The four dissenters concluded that defendant was prejudiced by the comment to the extent that his ability to obtain a fair adjudication had been impaired. That being so, they would have held that although refusal to allow a motion for a mistrial is usually within the discretion of the court, the

---

[4] There were other assignments of error that the Court of Appeals rejected, *State v. White,* 75 Or App 722, 707 P2d 1267 (1985), but the petition for review does not address those assignments.

denial here was error. They found the purportedly curative instruction to be inadequate because it did no more than tell the jury that defendant's refusal to testify at Harris' trial was not relevant.

On the jury instruction point, the majority conceded that manslaughter in the first degree is embraced within the framework of the murder statutes but held that the evidence provided no basis for the requested instruction. The majority reasoned that the method of wiring the explosive permitted no other inference than that the act was done intentionally for the specific purpose of killing Harris. They pointed out that defendant did not dispute that Kell intended to kill the victim; rather, his position was that he was so peripherally involved that he was not guilty at all. The majority reasoned that the jury must have found him guilty, at least as an "accessory," and therefore his mental state was not that of recklessness, on which a finding of manslaughter would have had to have been based.

The two dissenters from this part of the decision pointed out that the difference between the state's theory and defendant's "bears not only on what events transpired but on what defendant's mental state was." Defendant's argument was that there was evidence from which the jury could have found that his mental state was only that of reckless indifference to what Kell was doing. That being so, these dissenters reasoned, defendant was entitled to have the jury determine what his mental state was.

### III.

We allowed defendant's petition for review to consider only the two issues posed at the outset of this opinion. 300 Or 562, 715 P2d 94 (1986).

### A. *Prosecutorial Misconduct*

For about two decades preceding this trial, prosecutors have been aware that the Constitution of the United States does not permit drawing to the jury's attention a defendant's exercise of the right to remain silent. *Griffin v. California,* 380 US 609, 85 S Ct 1229, 14 L Ed 2d 106 (1965). Some three years before that decision, this court held that the Oregon Constitution did not permit such a reference. *State v.*

*Wederski,* 230 Or 57, 368 P2d 393 (1962).[5] The prosecutor here deliberately chose to offend the rules. His own argument to the trial judge, quoted above, demonstrates that point. He not only would have put to the jury defendant's exercise of his right to remain silent, but apparently intended to continue by showing that defendant had refused to obey an order of the court to break his silence.[6]

Where a prosecutor has introduced evidence of a defendant's invocation of the right to remain silent, this court has stated the following rule:

> "There is no doubt that it is usually reversible error to admit evidence of the exercise by a defendant of the rights which the constitution gives him if it is done in a context whereupon inferences prejudicial to the defendant are likely to be drawn by the jury."

---

[5] Amicus, National Association of Criminal Defense Lawyers, contends that we should decide whether the comment was improper on the basis of OEC 513, which provides:

> "(1) The claim of a privilege, whether in the present proceeding or upon a prior occasion, is not a proper subject of comment by judge or counsel. No inference may be drawn from a claim of privilege.

> "(2) In jury cases, proceedings shall be conducted, to the extent practicable, so as to facilitate the making of claims of privilege without the knowledge of the jury.

> "(3) Upon request, any party against whom the jury might draw an adverse inference from a claim of privilege is entitled to an instruction that no inference may be drawn therefrom."

Because we have not had the benefit of full briefing on that issue, we shall not decide it.

[6] The defendant's exercise of his right to remain silent both in *Griffin v. California,* 380 US 609, 85 S Ct 1229, 14 L Ed 2d 106 (1965), and in *State v. Wederski,* 230 Or 57, 368 P2d 393 (1962), occurred during his own trial. Since the time of those decisions, the Supreme Court of the United States has made it clear that the Due Process Clause prevents the prosecution from using at trial the defendant's exercise of his right to remain silent under police custodial interrogation. *Miranda v. Arizona,* 384 US 436, 86 S Ct 1602, 16 L Ed 2d 694 (1966):

> "In accord with our decision today, it is impermissible to penalize an individual for exercising his Fifth Amendment privilege when he is under police custodial interrogation. The prosecution may not, therefore, use at the trial the fact that he stood mute or claimed his privilege in the face of accusation."

384 US at 468 n 37.

It has not been argued to us that a different constitutional rule should apply to exercise of the privilege on the occasion of a prior trial, and we do not see a reason to pronounce a different rule. At a subconstitutional level, the Oregon Evidence Code would seem to prohibit a prosecutor's drawing to the jury's attention the claim of a privilege. *See* OEC 513, *supra,* n 5.

*State v. Smallwood,* 277 Or 503, 505-06, 561 P2d 600 (1977). We see no reason why the same rule should not apply to the deliberate injection of similar information by the prosecutor in opening statement. It is the teaching of both *Griffin v. California, supra,* and *State v. Wederski, supra,* that informing the jury that a defendant has exercised the right to remain silent is likely to prejudice the defendant's right to a fair trial. As this court stated in *Wederski,* there is a "presumably harmful effect." 230 Or at 60. This prosecutor was not inexperienced; the trial court could assume that the prosecutor was aware of the decisions above noted. So can we.

■    The trial court and appellate court, when faced with prosecutorial misconduct, must decide what remedy is to be applied. If the trial court refuses to allow a motion for mistrial and the appellate court is convinced that the misconduct is such that the defendant was deprived of a fair trial, the appellate court's only remedy is to grant a new trial. Obviously, the trial court in such a situation could have applied virtually the same remedy by declaring a mistrial. It would certainly be less burdensome to the system to do exactly that where the misconduct takes place as early as in opening statement. A mistrial has at least one advantage over reversal by an appellate court. The defendant cannot speculate on the verdict.

■    This court has stated that the "presumably harmful effect" of prosecutorial misconduct may be obviated by a proper instruction. *State v. Wederski, supra,* 230 Or at 60. The dispositive question on this issue, therefore, is whether the purportedly curative instruction was sufficient to unring the bell.

> "There may, however, be cases in which the testimony which the jury is instructed to 'disregard' is so prejudicial that, as a practical matter, 'the bell once rung, cannot be unrung' by such an admonishment."[7]

---

[7] Mr. Justice Stevens has phrased the same idea somewhat differently:

"For the judge or prosecutor to call it [a defendant's silence] to the jury's attention has an undeniably adverse effect on the defendant. Even if jurors try faithfully to obey their instructions, the connection between silence and guilt is often too direct and too natural to be resisted. When the jurors have in fact overlooked it, telling them to ignore the defendant's silence is like telling them not to think of a white bear."

*Lakeside v. Oregon,* 435 US 333, 345, 98 S Ct 1091, 55 L Ed 2d 319 (1978) (Stevens, J., dissenting).

*State v. Jones,* 279 Or 55, 62, 566 P2d 867 (1977).[8] In that case the prosecutor, knowing that he had no proof that defendant had any prior conviction for rape, persisted by insinuation and other improper methods to put to the jury that defendant had committed rapes many times previously. Among other things, the prosecutor called a police officer, who testified that another witness, Mullins, had stated in the officer's presence that defendant "had done it so many times before." The trial court instructed the jury "to disregard the statement made by the last witness [the officer]. You are directed to erase it from your mind and pay no attention to it." 279 Or at 62. This court held that that instruction was insufficient to unring the bell and ordered a new trial.

Guilt in fact and conviction are not the same thing. One may commit acts that deserve criminal penalty, but the penalty cannot be imposed unless there is a conviction. A conviction establishes guilt in law according to procedural rules that flow from societal notions of fairness and constitutional requirements of due process. *See Kotteakos v. United States,* 328 US 750, 764, 66 S Ct 1239, 90 L Ed 1557 (1946). In other words, one is entitled to a fair trial before one can be said to have been convicted.

■■ Where prosecutorial misconduct would prevent a fair trial, the trial judge may well choose to allow a timely motion for a mistrial. The source of the resulting extra expense to the taxpayers will be readily identifiable to the community. If the trial judge would "cure" the effect of the misconduct, the judge must do something more than blandly instruct the jury to forget that it has just seen a white bear. *See* note 7, *supra.* We are confident that the trial judges of this state have ability to tailor an instruction that will point out the reason that the jury is to disregard egregiously improper attempts to influence the jury and thus deny to a defendant a fair trial. The kind of

---

[8] In *State v. Jones,* 279 Or 55, 63, 566 P2d 867 (1977), this court said:

"While it is expected that a prosecuting attorney will be zealous in his efforts to convict a defendant believed by him to be guilty of a crime, it must also be remembered that the prosecuting attorney, as a representative of the state, owes a primary duty to see that all criminal defendants receive a fair trial."

The court held that prosecutorial misconduct in that case required a new trial. The prosecuting attorney in that case was the same one as in the case at bar. *See also In re Barnes,* 281 Or 375, 574 P2d 657 (1978).

instruction given here did no more than tell the jury that defendant's refusal to testify in Harris's trial was irrelevant.

We conclude that the misconduct in this case was at least as serious as that involved in *State v. Jones, supra,* and that the purportedly curative instruction here was not even as strong as that given in *Jones.* We hold that this defendant is entitled to a fair trial, which must be by way of a new trial.

B. *Lesser Included Offense Instruction*

Defendant requested that the following instruction be given to the jury:

"If you have reason to doubt that the defendant is guilty of murder, you should consider whether the defendant is guilty of manslaughter in the first degree. (Oregon Uniform Jury Instruction No. 410.15)

"Oregon law provides:

"A person commits manslaughter in the first degree if he causes the death of another human being recklessly under circumstances manifesting an extreme indifference to the value of human life.

"In order to establish manslaughter in the first degree, it is necessary for the State to prove beyond a reasonable doubt each of the material elements of the crime as follows:

"First, that the crime was committed in Lane County, Oregon.

"Second, that the crime was committed on or about the 2nd day of December, 1982, the date alleged in the indictment.

"Third, that the defendant caused the death of Robert Eugene Harris recklessly under circumstances manifesting an extreme indifference to the value of human life.

"Fourth, that the defendant caused the death of Robert Eugene Harris, in the manner specified in the indictment: [*sic*]

"This definition applies:

" 'Recklessly' means that a person is aware of and consciously disregards a substantial unjustifiable risk that death will occur. The risk must be of such a nature and degree that disregard thereof constitutes a gross deviation from the standard of care that a reasonable person would observe in the situation. (Oregon Uniform Jury Instruction No. 410.16)"

The trial court refused to give the instruction. Not only was an

exception imported under ORCP 59H. and ORS 136.330(2) for failure to give the instruction, but the fact that it was not given was brought by defendant's counsel to the attention of the trial judge at the close of the charge to the jury. From the colloquy that occurred among court and counsel at that time, we infer that the trial judge's refusal was because he could perceive no evidence to support giving the requested instruction. That being so, *State v. Naylor,* 291 Or 191, 195, 629 P2d 1308 (1981), would fully support the trial judge's refusal, for in that case this court held that there must be evidence from which the jury could rationally and consistently find the defendant guilty of the lesser offense and innocent of the greater.

Our decision in *Naylor* rested on earlier cases: *State v. Palaia,* 289 Or 463, 614 P2d 1120 (1980); *State v. Washington,* 273 Or 829, 543 P2d 1058 (1975); and *State v. Williams,* 270 Or 152, 526 P2d 1384 (1974). In the dissent in the case at bar authored by the Chief Judge of the Court of Appeals, the logic of those decisions was strenuously questioned. The Chief Judge wrote:

"It seems to me to be a strange rule, in a system that requires the state to prove every element of every crime charged beyond a reasonable doubt, that a defendant may have the factfinder consider a lesser included as well as a greater offense only if he can point to evidence that disproves the elements of the greater offense that are not also elements of the lesser one.

"The Supreme Court said in *State v. Palaia,* 289 Or 463, 614 P2d 1120 (1980):

" 'It is correct that the jury could disregard the uncontradicted evidence [of the greater offense], irrational as such a result might be. However, the trial court has no obligation to assist the jury in reaching an irrational result by instructing them, in effect, that they can disregard the evidence * * *.' 289 Or at 475.

"In my view, that statement turns the analysis hindside to. A properly phrased lesser included offense instruction does not tell the jury to disregard evidence of the greater offense, any more than instructions on the presumption of innocence and the state's burden of proof tell the jury that it must acquit the defendant no matter what the evidence shows. The practical import of the statement in *Palaia* is that, to protect the jury from making an irrational finding, the trial court must in

effect direct a verdict against the defendant on the elements of the more serious offense that are not common to the lesser included offense.[1] I think that it is alien to our system of criminal justice to hold, as *Palaia* and *Washington* appear to do, that the jury *must* find *any* fact against the defendant that the state is required to prove, or that it *can* find *only* the most aggravated degree of guilt that the state's proof supports.

---

"[1] The jury of course retains the option to acquit outright. Nevertheless, because a conviction of a lesser included offense serves as an acquittal of the greater crime charged, *Palaia* and *Washington* effectively allow a directed verdict against the defendant as between the greater and lesser offenses." (Emphasis in original.)

75 Or App at 730. It was that questioning that primarily impelled our decision to allow review on this issue.

■ The right to an instruction on a lesser included offense springs from statute. ORS 136.465 provides:

"In all cases, the defendant may be found guilty of any crime the commission of which is necessarily included in that with which the defendant is charged in the accusatory instrument * * *."

The text of the statute does not require that there be evidence from which the jury can "rationally and consistently" find a defendant guilty of a lesser offense included in the charged offense.

This court had reason to interpret the statute in *State v. Coffman*, 171 Or 166, 136 P2d 687 (1943). There, the defendant had been indicted for negligent homicide. The indictment charged and the evidence showed that he drove his vehicle on the left side of a major highway, causing a collision with another vehicle that resulted in the death of a passenger in the other vehicle. The defendant requested an instruction that would have allowed the jury to find him guilty of reckless driving if it did not find him guilty of negligent homicide. This court found that the Supreme Court of the United States and the highest courts of several other states had construed similar statutes to require that not only must the lesser offense be embraced within the offense charged, but that there must be a basis in the evidence upon which a verdict of something other than simply guilty or not guilty of the offense charged might be based. Examining the evidence in the case before it, this

court ruled that in order to sustain a verdict of reckless driving, the jury would have had to find the negligent driving with which the defendant was charged, and because if that were found there could be no rational basis for finding anything other than guilt of the offense charged, the trial court did not err in refusing to give the requested instruction.[9]

In *State v. Wilson,* 182 Or 681, 189 P2d 403 (1948), it was treated as given that there must be evidence which would permit a jury rationally to find guilt of the lesser offense rather than that of the charged offense. To the same effect, *see State of Oregon v. Nodine,* 198 Or 679, 259 P2d 1056 (1953).

In *State v. Delaney,* 221 Or 620, 332 P2d 71, 351 P2d 85 (1960), the charged offense was forcible rape. The defendant assigned as error the trial court's failure to instruct on the lesser included offense of assault. The defendant's evidence did not show an assault; instead his evidence showed no untoward conduct whatsoever. This court said:

> "An instruction as to a lesser offense is only required when the evidence permits a finding that an offense of lesser degree than charged may have been committed."

*Id.,* 221 Or at 655. The trial court's failure to instruct was affirmed.

In none of the decisions just reviewed was there any independent analysis to justify the rule that there must be evidence on which the jury could rationally find guilt of a lesser offense and no guilt of the offense charged. Starting with *State v. Coffman, supra,* the court only purported to find a prevailing prerequisite to that effect in the decisions of other courts in construing or interpreting similar statutes. From that time until 1974 the logic of the rule was not really challenged.

In *State v. Williams,* 270 Or 152, 526 P2d 1384 (1974), however, the logic of the rule was ably questioned both on its face and as applied to the facts in that case. Chief Justice O'Connell authored a dissent in which he conceded that the overwhelming weight of authority supported the interpretation of the statute adopted in *Coffman* but argued that the

---

[9] An arguably similar interpretation of the statute is found at least as early as in *State v. Cody,* 18 Or 506, 23 P 891, 24 P 895 (1890).

logic of the minority rule to the contrary was better reasoned. The tenor of his dissent is similar to that of the Chief Judge of the Court of Appeals in the case at bar.[10]

The following year, in *State v. Washington,* 273 Or 829, 543 P2d 1058 (1975), Chief Justice O'Connell further warmed to the fray and expanded on the basic argument that he made in *Williams.* This time Justice Holman joined him in dissent.

Thus, the rule of *Coffman* has been seriously challenged and debated twice among the members of this court about a decade ago. It must be remembered that the rule arises out of interpretation and application of a statute, namely, ORS 136.465. To reverse field now would constitute a serious disregard of the rule of *stare decisis.* When this court interprets a statute, the interpretation becomes "a part of the statute as if written into it at the time of its enactment." *State of Oregon v. Elliott,* 204 Or 460, 465, 277 P2d 754, *cert den* 349 US 929, 75 S Ct 772, 99 L Ed 1260 (1955). If, in interpreting a statute, we make a mistake or proceed on a course which offends the legislature, that body can rectify our action. For some 44 years now this court has interpreted ORS 136.465 (and its forerunners) to require that there be evidence before the jury can consider guilt of a lesser included offense and only if that rationally can be done. We are not now disposed to question that interpretation, and we leave it to the legislature whether there should be change.

█ The final question then is whether defendant was entitled to the requested instruction on manslaughter under the rule as we have most recently expressed and affirmed it in *State v. Naylor, supra.* We believe that he was for the reasons expressed by the Chief Judge of the Court of Appeals in his dissent:

"Even given the rule of *Palaia, Washington* and similar cases, I think the requested manslaughter instruction should have been given here. The majority states:

" 'Defendant does not contend that there was no intent to kill the victim; the theory of his defense was solely that he was insufficiently involved in the plot or its execution

---

[10] Justice Holman also dissented, but on the basis that application of the rule required reversal.

to be criminally responsible for the victim's death at all. He argues that his testimony that he was aware of preparations made in the killing of the victim and failed to notify the police supports a theory of manslaughter committed recklessly under circumstances manifesting extreme indifference to the value of human life. It does not. If the jury accepted that evidence it would have to have found him not guilty. It could not have rationally and consistently found him guilty of manslaughter in the first degree but not guilty of murder if it found him (as it must have) to have been involved in the intentional bombing of the victim's vehicle.' 75 Or App at 727.

"It is undoubtedly correct that defendant's first choice would have been an acquittal rather than a manslaughter or any conviction. It is also correct, as the majority indicates, that the jury did not believe defendant's testimony insofar as it was *completely* exculpatory. However, I do not think it follows that there was *no* evidentiary basis from which guilt of manslaughter rather than murder could be inferred. Defendant's claim was not that he was absolutely unconnected with the events; his theory was that his involvement was so peripheral that it did not give rise to the highest level of criminal accountability. This is not a case like *State v. Miller,* 53 Or App 493, 632 P2d 493 (1981), where the defendant's *only* defense — that he was not at the scene of the crime — had no bearing on what the crime was. The factfinder here, unlike the factfinder in *Miller,* could have inferred that the truth about the nature and extent of defendant's involvement in the crime lay somewhere between defendant's testimony and the state's theory. The majority applies a rigid test, under which a defendant's testimony is insufficient to require the giving of a requested lesser included offense instruction unless the defendant all but says that he did exactly what the requested instruction describes. I do not read *Washington* or its progeny as requiring that a defendant *confess* to a lesser included offense in order to have the jury instructed on it.

"It is of particular importance here that the difference between the state's theory and defendant's bears not only on what events transpired but on what defendant's mental state was. The principal basis for defendant's argument that the jury should have been given the manslaughter instruction is that it could have found that he acted recklessly rather than intentionally. The mental state of a criminal defendant is a uniquely factual question and, whatever logic the *Palaia-Washington* rule might have in other contexts, I strongly question whether the rule can properly be applied to refuse a

requested lesser included offense instruction when the dispute over the degree of the defendant's guilt turns on the mental state with which he acted." (Emphasis in original.)

75 Or App at 731-32.

The Court of Appeals and the trial court are reversed, and this case is remanded to the trial court for a new trial.